# Selected Excepts from Deposition of Ben Ribeiro

Page 1

Volume:        I
Pages:      1-55
Exhibits:   None

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

Case No. No. 2:20-CV-01937-KM-ESK

SEUNG EUN OH,
          Plaintiff

VS.

COLLECTO, INC., d/b/a EOS CCA,
          Defendant

DEPOSITION OF BEN RIBEIRO
Friday, April 30, 2021
VIA ZOOM
Commencing at 10:00 a.m.

Debra A. Vance
Professional Shorthand Reporter

Page 2

A P P E A R A N C E S

FOR THE PLAINTIFF:

JONATHAN CADER, ESQ.
     BARSHAY SANDERS, PLLC
     100 Garden City Plaza, Suite 500
     Garden City, New York  11530
     516-203-7600 Fax 516-282-7878
     jcader@barshaysanders.com

FOR THE DEFENDANT:

LORI J. QUINN, ESQ.
     GORDON REES SCULLY MANSUKHANI
     One Battery Park Plaza, 28th Floor
     New York, New York  10004
     212-453-0758
     ljquinn@grsm.com

ALSO PRESENT:
Peter Garland, EOS CCA Compliance Department

Page 3

I N D E X
--------------------------------------------------
Examination                                   Page
--------------------------------------------------

By Mr. Cader                                     4

No.           Description              Page

(None Marked)

Page 4

-------------------------------------------------
          P R O C E E D I N G S
               10:00 a.m.
-------------------------------------------------
     COURT REPORTER:  Due to the need for this
deposition to take place remotely because of the
government's stay-at-home order and social distancing
guidelines, the parties will stipulate that the court
reporter may swear in the witness via ZOOM/video
conference and that the witness has been
satisfactorily identified by his Massachusetts
driver's license.
          BEN RIBEIRO,
     Deponent, having been satisfactorily identified
      and duly sworn, deposes and states as follows:
          EXAMINATION
BY MR. CADER:
     Q.   Good morning.  My name is Jonathan
Cader.  I represent the plaintiff in an action
titled "Seung Eun Oh against Collecto, Inc., d/b/a
EOS CCA," pending in the United States District
Court for the District of New Jersey, under
Case 20 Civil 1937.
          Could you please state your name and



Page 25

Q.   What do you recognize it to be?

A.   This would be the account history out of our fax system, out of our collection system. So it's -- this is what I was referring to, so this gives us a little bit more information, along with all the notes and records of the account.

Q.   Okay.  Terrific.

If you could please look at the first page, the one that has the number at the bottom EOS 0001.  Can you tell me, in the first line, opposite "Collector," what information is there?

A.   So, besides "Collector," VDS-zero disputes verbal compliance.

So this is, at the time that this document was produced, it was in a VDS route, which is like -- it's like -- it's where the account was being held at the time, which is within our compliance department.

Q.   What does "VDS" stand for?

A.   Verbal Dispute.

Q.   And in the -- if you -- rather than going through this laboriously, can you just tell me narratively what's on the page is?

Page 26

A.   Yes.  So, we have the account number up on the top left, right underneath VDS.  That's the EOS CCA account the number.  That's assigned automatically when we receive an account.

The disposition is the status the account was in at the time.  So, it looks like it was in a fraud waiting.  So this disposition means we've sent out a fraud packet and we are waiting for it to be returned back.

The wait date is the date.  That's just a date that's scheduled for the next follow-up.  It doesn't necessarily mean we're going to follow up, it's just -- that's just a wait date.  It's consistent on every single account.

And then next is the debtor information.  That's the specifics of the consumer.  So we have the last name, first name, address at the time, POE information if we have it, and then the redacted social as well as the phone number.  And then right underneath that, we have the original creditor's information. So, client, VLL002, that's a Verizon landline account, just an abbreviated format, if you

Page 27

will.

The current creditor is U.S. Asset Management, Inc.  And then there's the original creditor account number, which is redacted, and the last four is 0001.

The total balance, the original balance of 1,457.19.

The list date that appears right underneath the client is the date that it was actually listed with us, with EOS CCA.

The service date is when the service was activated.

I'm sorry?

Q.   Go ahead.

A.   Okay.  Number of letters, time spent on the account, number of calls, contacts.

Total balance, 1,457.19 which is the same as the original balance.  And then underneath that, we have multiple accounts.  If somebody has more than one account, it would be listed in this window.  In this case, we have one account.  There is no other accounts for this individual.

And then it will also show you the

Page 28

principal amount, which is the very first column there.  And then if there was any interest, you would see that under that column.  Any additional fees that would have been added for whatever reason, like collection fees or penalties, sometimes clients do that.  In this case, there were none here.  No additional added interest.  And then, yeah, no miscellaneous, no attorney fees or miscellaneous or post-judgment interest.

And then underneath that, we have the letter history.  So we can see that we sent out the initial notice on 10/9/17.  Then we sent out a subsequent letter, 170, on 2/13.  Then another letter on 4/13.  And then another letter on 6/19.  2/12/19 and 3/25/19 was the final notice that was sent out.  And you can see the letter ID there.  Each number is a different letter.

Then it says, "No payments."  That's just telling us there were no payments that applied.

Underneath that, we have Banko dates.  So, when we first refuse an account, all



Page 45

you had different letter codes. Are they specific to a letter code?

A. No.

Q. Okay. So then, tell me why they would be blank in one and not another.

MS. QUINN: Objection. You can answer if you can, Ben.

A. So, I guess the best way to explain it is, we have a consumer's information on the main screen, which was the first screen we looked at. Then we have our LMIS window, Letter Management Information Systems window, that keeps record of dates, letter ID, address where the letter was sent. Those fields are all blank until we start sending letters. When we send a letter, those fields then are populated with the specifics, the letter ID, the date, the address we sent a letter to. Only then are those fields populated. So it goes from blank to the address we have on file to reflect where we sent the letter.

Q. Okay. Let's turn to 007. About a dozen lines down, there's an II9 entry below a series of D1Ss. What is II9?

A. II9 would have been the representative

Page 46

that made the outbound call.

Q. Okay. So, can you tell me what's being described in the notes next to that?

A. Outbound call to the phone number that is there. Spoke to debtor. Quality assurance. Mini Miranda. Verified information. Advised debtor balance in full. Said never lived here and never had Verizon. Said he knows what to do. I don't know what -- to give him info to fax documents. He hung up.

So, it almost looks like we were attempting to give him some information so he could fax in documents, and he hung up.

Q. Fax in documents of what?

MS. QUINN: Objection to form. You can answer, Ben, if you can.

A. Without listening to the call recording, I'm not sure. But I would say where the person is saying "I never had Verizon," we were probably trying to have him send a letter that's disputing the account, explaining why he's disputing the account.

Q. Okay. Thank you.

And in the line below that, spoke to

Page 47

debtor, no promise. What does that mean?

A. When we make a contact with anybody, we have to -- when we terminate, when we finalize the account and we label the account as made a contact, there are certain contact codes we use. In this case, it was SD, spoke to debtor. That was used and the system automatically stamps that we spoke to the consumer and there was no promise.

Q. No promise from who?

MS. QUINN: Objection to form. You can answer, Ben.

A. From the consumer.

Q. And then in those following three lines, from updated to set disputed flag, tell me what's happening there.

A. So, on 3/2/18, we, the rep, based off of that conversation, they placed the account into a verbal dispute. And when we do that, it triggers a flag, a dispute flag, in the event we're reporting the account to the Bureau so that we can reflect that the account is being disputed on the credit report.

Q. And what is UDW?

A. User-defined window.

Page 48

Q. Okay.

Then, it looks like it's from there through the top of 009, there's a lot of activity going on right about that same time on 3/2/18. Can you just describe for me, without going line by line, generically, tell me what those things are doing?

MS. QUINN: Objection to form. You can answer.

A. I'm just looking it over here.

So, if we make contact with a consumer, where they verify that they are who we're trying to contact, we have a window that we update that is called verify good phone. And when we update the verify good phone, all these other windows you see here, 57112, 57113, 57114, those are all user-defined windows for phone numbers.

So, if we have three numbers for someone and we identify that the number ending in 111 is the verified phone number, we put all the other numbers on hold, so that we're only dialing the verified number only.

So that's what's happening here with

