**GORDON REES SCULLY MANSUKHANI, LLP**
Lori J. Quinn
One Battery Park Plaza, 28th Fl.
New York, New York 10004
Phone: 212.453.0758
Facsimile: 212.269.5505
*Attorneys for Defendant Collecto, Inc., d/b/a EOS CCA*

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **SEUNG EUN OH,** *individually and on behalf of all others similarly situated,*<br><br>**Plaintiff,**<br><br>v.<br><br>**COLLECTO, INC., d/b/a EOS CCA,**<br><br>**Defendant.** | **Case No. 20-cv-01937-KM-ESK** |

### DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT
### OF MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, defendant Collecto, Inc., d/b/a EOS CCA ("EOS") hereby moves this Honorable Court for summary judgment as to all claims raised by Plaintiff Seung Eun Oh ("Plaintiff") under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et al.* ("FDCPA").

### I.   INTRODUCTION

Plaintiff attempts to assert claims concerning a collection letter that EOS mailed to her, but lacks standing because she never read the letter

nor did anyone read it to her. Even if Plaintiff had read the letter, however, Plaintiff's claims still fail, because the letter is not false, deceptive or misleading in any sense.

## II.   LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriately granted where, "after the close of discovery and viewing the evidence in the light most favorable to the non-moving party, the movant establishes that no genuine issue of material fact remains." *Jensen v. Pressler & Pressler*, 791 F.3d 413, 417 (3d Cir. 2015) (citing Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 332 (1986)). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material factual dispute is one that "'might affect the outcome of the suit under governing law.'" *Id.* (quoting *Lupyan v. Corinthian Colls. Inc.*, 761 F.3d 314, 317 (3d Cir. 2014)).

Summary judgment is precluded "if a disputed fact exists which might affect the outcome of the suit under the controlling substantive law." *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 637 (3d Cir. 1993) (citing *Anderson*, 477 U.S. at 248). On the other hand, a court must grant summary judgment against a Plaintiff "who fails to make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

### B.    Article III Standing

Article III of the Constitution limits the jurisdiction of federal courts to the adjudication of "cases" and "controversies." *DiNaples v. MRS BPO, LLC*, 934 F.3d 275, 279 (3d Cir. 2019) (citing U.S. Const. art. III, § 2, cl. 1). To enforce the case-or-controversy requirement, courts require that plaintiffs have standing to sue. *Id.* (citing *Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 137 (3d Cir. 2009)). As Plaintiff is the party invoking federal jurisdiction, she " 'bears the burden of establishing' the elements of standing, and 'each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.' " *Benali v. AFNI, Inc.*, No. CV 15-3605-BRM-DEA, 2017 WL 39558, at *5 (D.N.J. Jan. 4, 2017) (quoting *FOCUS v. Allegheny County Court of Common Pleas*, 75 F. 3d 834, 838 (3d Cir. 1996).

"Standing has three elements: the plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (internal quotation marks omitted). "An injury in fact is one that is concrete and particularized." *Id.* (quoting *Spokeo*, 136 S. Ct. at 1547)

3

(internal quotation marks omitted). Primarily at issue in this case is the first element of injury in fact, "the 'first and foremost' of standing's three elements." *Benali*, 2017 WL 39558, at \*5 (quoting *Spokeo*, 136 S. Ct. at 1547).

A plaintiff must show that she suffered "an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical" to establish injury in fact. *Id.* (quoting *Spokeo*, 136 S. Ct. at 1548) (internal quotation marks omitted). "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Id.* (quoting *Spokeo*, 136 S. Ct. at 1548) (internal quotation marks omitted). In addition, a particularized injury must also be 'concrete.' *Id.* (quoting *Spokeo*, 136 S. Ct. at 1548) (internal quotation marks omitted). "A concrete injury must be 'de facto'; that is, it must actually exist." *Id.* (citation and quotation marks omitted).

Intangible injuries may be concrete such that "under certain circumstances, the risk of real harm can also satisfy the requirement of concreteness." *Id.* (citing *Spokeo*, 136 S. Ct. at 1549). "Article III standing," however, still "requires a concrete injury even in the context of a statutory violation." *Id.* (quoting *Spokeo*, 136 S. Ct. at 1549) (internal quotation marks omitted). Therefore, "a plaintiff may 'not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.'" *Id.* (quoting *Spokeo*, 136 S. Ct. at

1549). Thus, if a statutory violation "does not present a material risk of harm to [the] underlying interest" being protected, "a plaintiff fails to demonstrate concrete injury." *Kamal v. J. Crew Grp., Inc.*, 918 F.3d 102, 112-13 (3d Cir. 2019).

### III.   <u>**FDCPA LEGAL STANDARD**</u>

In order to prevail on an FDCPA claim, a plaintiff must establish that "(1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Levins v. Healthcare Revenue Recovery Grp., LLC*, No. CV 17-928 (RBK/KMW), 2020 WL 3169356, at *3 (D.N.J. June 15, 2020) (quoting *Levins v. Healthcare Revenue Recovery Grp., LLC*, 902 F.3d 274, 280 (3d Cir. 2018)). For purposes of this motion, only the fourth prong is at issue.

When evaluating claims alleging that a collection letter violates the FDCPA, courts in this Circuit employ the "least sophisticated debtor" standard. *Blair v. Fed. Pac. Credit Co., LLC*, Civ. No. 20-4100 (KM)(JBC), 2021 WL 236582, at *3 (D.N.J. Jan. 25, 2021) (citing *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006)). Although this standard is "'lower than the standard of a reasonable debtor, it preserves a quotient of reasonableness and presumes a basic level of understanding and

willingness to read with care.' " *Id.* (quoting *Jensen v. Pressler & Pressler*, 791 F.3d 413, 418-19 (3d Cir. 2015)).

Application of this objective standard means "'that the specific plaintiff need not prove that she was actually confused or misled, only that the objective least sophisticated debtor would be.' " *Id.* (quoting *Jensen*, 791 F.3d at 419). That said, "[t]he debtor, however unsophisticated, must nevertheless 'read collection notices in their entirety.' " *Id.* (quoting *Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 299 (3d Cir. 2008)). "The standard does not go so far as to provide solace to the willfully blind or non-observant." *Campuzano-Burgos*, 550 F.3d at 299.

## IV.   FACTS[1]

This case concerns Plaintiff's former Verizon Wireless ("Verizon") account, assigned Verizon account number ending in 0001 (the "Account").[2] ECF 1 at ¶¶ 14-20 & Ex. 1 thereto. Verizon sold the Account to U.S. Asset Management, Inc. ("USAM") on September 25, 2017. Declaration of Meryl Friedman of Verizon ("Verizon Decl.") ¶¶ 1-2, 4-9 & Exhibits A-C. Verizon and Plaintiff were parties to a Verizon FiOS telephone and internet agreement ("Agreement"). Verizon Decl. ¶ 4. Under

---

[1] As set forth in EOS's Local Rule 56.1 Statement of Undisputed Material Facts.

that agreement, Plaintiff agreed to pay Verizon for all goods, services and any and all penalties incurred with the termination of the Account and/or failure to return equipment. *Id.*

Accordingly, Verizon sent invoices to Plaintiff as her last known address, including monthly invoices dated from May 13, 2015, to November 31, 2015. *Id.* at ¶¶ 4-5 & Exhibits B-C. Verizon's records do not reflect that the statements mailed to Plaintiff were returned by the post office or that Plaintiff objected to them. *Id.* at ¶ 5. As of September 25, 2017, when Verizon sold Plaintiff's account to USAM, Plaintiff's account carried the balance reflected in the last invoice from Verizon to Plaintiff, dated November 13, 2015: $1,457.19. *Id.* at ¶ 6 & Ex. B.

On or about September 25, 2017, US Asset Management, Inc., placed the Account with EOS for collection. Ribeiro Declaration ("Ribeiro Decl.") ¶¶ 4-5 & Ex. F at EOS 0001; Ribeiro Deposition ("Ribeiro Dep.") at 27:2-23. EOS sent its initial collection letter to Plaintiff on October 9, 2017, seeking to collect the total balance due of $1,457.19. Ribeiro Decl. ¶ 6 & Ex. F at EOS 0001; Ribeiro Dep. at 27:17-28:13.

On March 2, 2018, EOS called Plaintiff's number and spoke with a male who claimed to be Plaintiff. Ribeiro Dep. at 45:21-46:10; Ex. F at EOS 0007. The person disputed the debt. Ribeiro Dep. at 46:4-22 & Ex. F at EOS 0007. Thereafter, EOS mailed a letter dated March 25, 2019, to

Plaintiff (the "Letter"). ECF 1 at Ex. 1; Ribeiro Decl. at ¶ 8 & Ex. H.[3] The Letter acknowledge the verbal dispute of the Account that EOS received and requested information from Plaintiff in order to investigate the dispute. Ribeiro Decl. Ex. H. To facilitate this, page 2 of the Letter is a blank "Affidavit of Forgery." *Id.*

The Letter explained that for EOS to resolve Plaintiff's dispute, it needed to "receive the completed copy of the attached affidavit (accompanied by any supporting documentation outlined within). Doing so may result in finding that you are not responsible for payment on this account." *Id.* Further, the Letter stated "If we have not received your documentation by 05/24/19, your claim will be closed and you will be held responsible for payment of all charges billed to your account." *Id.* & ECF 1 at ¶ 33.

Plaintiff was deposed, with the assistance of a Korean Interpreter, on January 28, 2021. Pl. Dep. at 2:1-22. Plaintiff completed high school in Busan, South Korea and came to the United States in 2009. *Id.* at 10:20-11:6.

When Plaintiff was shown Exhibit 3A, a Verizon invoice from the Account dated July 13, 2015, she recognized her name on the invoice but

---

[3] Plaintiff attached a true and correct copy of the first of two pages of the Letter to her complaint. ECF 1 at Ex. 1. EOS provides both pages of the letter as Ribeiro Decl. Exhibit H.

denied ever having a Verizon account. *Id.* at 44:12-24 & Dep. Ex. 3A. Asked if she called her family in Korea, Plaintiff answered that she does not call them there, rather she uses "talk or web." Pl. Dep. at 47:3-48:24. Despite Plaintiff's assertion, each and every call appearing in the monthly Account invoices from May 13, 2015, through September 13, 2015, was place to a number in South Korea. Verizon Decl. Ex. C.

When asked about the complaint in this action, Plaintiff stated that due to her lack of English skills, "I cannot even read it," she "could not remember about it" and she could not read a document that is not in her native Korean language. *Id.* at 27:6-15; *see also id.* at 64:4-7 (Pl. does not "really open letters that much, because I don't understand everything that well"); 75:7-10 (Pl. was unable to read a document because it was in English). Shown a copy of the Letter at issue (Pl. Dep. Ex. 4F), Plaintiff did not remember it and said that she had not seen it before, but did recognize her name and her correct mailing address thereon. Pl. Dep. 64:16-65:23.

On or about December 21, 2000, Plaintiff's attorney Craig B. Sanders served a subpoena upon Verizon Communication, Inc., requesting the production of all documents and communications sent to Plaintiff concerning her account ending in 0001-89. Verizon Decl. ¶ 7. A copy of this subpoena is attached to the Verizon Declaration as Exhibit D. *Id.*

Verizon Communications, Inc. responded to the subpoena via fax on December 22, 2020. *Id.* at ¶ 8. A copy of this response is attached hereto

as Exhibit E (as redacted). *Id.* The response indicates that Verizon Communications, Inc. was not able to identify any documents, records or other materials responsive to Mr. Sanders' request, based upon the information provided. *Id.* The response further indicates that there were no accounts found for the provided account number. *Id.*

Verizon Communications, Inc.'s response was incorrect as the representative working the subpoena did not see the account because it no longer belonged to Verizon. *Id.* at ¶ 9. Upon further review of its records, Verizon Wireless did identify the account at issue, as Exhibits A-C document. *Id.* Thus, contrary to the erroneous response provided to Mr. Sanders, there was in fact a Verizon Wireless account held by Plaintiff and assigned an account number ending in 0001-89. *Id.*

## V.    LEGAL ARGUMENT

Plaintiff cannot withstand summary judgment for three reasons: (A) she has failed to carry her burden to establish Article III standing; (B) even if Plaintiff did satisfy the standing requirement, she did not read the Letter and thus could not have been misled by it; and (C) had Plaintiff been able to read the Letter, she would have found that it was not misleading or deceptive to the least sophisticated debtor.

### A.    Plaintiff Lacks Article III Standing

This Honorable Court lacks jurisdiction over Plaintiff's claims because Plaintiff has not carried her burden to show that her claims

10

present a case or controversy. To satisfy this burden, and thus establish standing, Plaintiff must show that she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *DiNaples v. MRS BPO, LLC*, 934 F.3d 275, 279 (3d Cir. 2019) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (internal quotation marks omitted)). Plaintiff, however, has failed to carry this burden.

The evidence fails to support Plaintiff's allegation that the Letter caused her an injury in fact. A particularized injury must "affect the plaintiff in a personal and individual way." *Benali v. AFNI, Inc.*, No. CV 15-3605-BRM-DEA, 2017 WL 39558, at *5 (D.N.J. Jan. 4, 2017) (quoting *Spokeo*, 136 S. Ct. at 1548). Plaintiff, however, could neither remember, nor did she read, the Letter giving rise to her claims. Plaintiff could not have been affected in a personal and individual way by the contents of a letter she did not read.

The evidence also fails to support Plaintiff's allegation of in injury in fact, as her alleged injury is not concrete. A concrete injury must be *de facto*, meaning that it must actually exist. *Id.* (citation omitted). Although a statutory violation, such as that alleged here, can present a risk of actual harm to satisfy the concreteness element, standing still requires that Plaintiff establish "a concrete injury even in the context of a statutory violation." *Id.* (quoting *Spokeo*, 136 S. Ct. at 1549) (internal quotation

11

marks omitted). Plaintiff's alleged damages, arising out of text used in a Letter she did not read, present no risk of actual harm. Due to Plaintiff's inability to read the English language, there was no material risk of harm to the underlying interest protected by 15 U.S.C. § 1692e or its subsections, which bar debt collectors from using false, deceptive, or misleading representations or means in connection with the collection of a debt.

A similar circumstance presented itself in *Benali*. There, the plaintiff sued a collection agency alleging that the agency had attempted to collect a debt he did not owe. *Benali*, 2107 WL 39558, at \*1-2. Specifically, the plaintiff asserted that a collection letter he received improperly sought to charge a processing fee for payments made electronically, which he asserted was false and misleading under § 1692e. *Id.* at \*3. The Court observed that even if the collection letter did violate the FDCPA, mere receipt of such a letter, "without more, is not sufficient to confer Article III standing" because the plaintiff knew that the debt was not his upon receipt of the letter. *Id.* at \*6. Given this, the Court concluded that the plaintiff had suffered no actual harm and that the alleged risk of harm was entirely hypothetical. *Id.* at \*7. Therefore, the Court held that Plaintiff had suffered no injury-in-fact such that he lacked Article III standing and dismissed the case for lack of subject matter jurisdiction. *Id.*

Plaintiff's claims are similar in that Plaintiff incurred no risk of being misled, little less being misled to her detriment, by a letter she did not read. Even if the Letter were to violate the FDCPA, the alleged violation lacks the required nexus to any injury-in-fact to Plaintiff. As such, Plaintiff has not satisfied her burden to demonstrate Article III standing such that the Court lacks subject matter jurisdiction.

**B.     Plaintiff Could Not Be Misled By a Letter She Did Not Read**

Even if Plaintiff could satisfy the standing requirement, she did not read the Letter and thus could not have been misled or confused by it. Plaintiff alleges violations of 15 U.S.C. § 1692e and multiple subsections thereof. Specifically, Plaintiff alleges violations of 15 U.S.C. § 1692e (barring the use of any false, deceptive, or misleading representation or means in connection with the collection of a debt; § 1692e(2)(A) (barring the false representation of the character, amount, or legal status of a debt), § 1692e(5) (prohibiting threats to take any action that cannot legally be taken or that is not intended to be taken) and § 1692e(10) (barring the use of any false representation or deceptive means to collect or attempt to collect a debt).

The fact that Plaintiff did not read the Letter bars her claims under § 1692e. As noted above, courts in this Circuit assess of violations of this section under the least sophisticated debtor standard. Application of this

13

objective standard means "'that the specific plaintiff need not prove that she was actually confused or misled, only that the objective least sophisticated debtor would be.'" *Blair v. Fed. Pac. Credit Co., LLC*, Civ. No. 20-4100 (KM)(JBC), 2021 WL 236582, at *3 (D.N.J. Jan. 25, 2021) (quoting *Jensen*, 791 F.3d at 419). "The debtor, however unsophisticated, must nevertheless 'read collection notices in their entirety.'" *Id.* (quoting *Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 299 (3d Cir. 2008)). "The standard does not go so far as to provide solace to the willfully blind or non-observant." *Campuzano-Burgos*, 550 F.3d at 299. Having not read the Letter, no matter what the reason, Plaintiff now seeks to avail herself of the least sophisticated consumer while remaining blind to the actual contents of the Letter.

Plaintiff situation is similar to the facts set forth in *Christy v. EOS COA*, 905 F. Supp.2d 648 (E.D. Pa. 2012). In that matter, the plaintiff received a collection letter addressed to his son and, without reading it, forwarded it to his attorney for review. *Christy*, 905 F. Supp.2d at 649-50. The two shared the same name, though the plaintiff was a "Sr." *Id.* The plaintiff filed suit asserting claims under the FDCPA, including § 1692e, claiming that it was false and deceptive to send him a letter even though he did not owe the debt by omitting "Jr." as a suffix to the name listed as the addressee. *Id.* at 655.

14

Noting that under the least sophisticated debtor standard, " '[a] collection letter is deceptive where it can be reasonably read to have two or more different meanings, one of which is inaccurate' " (quoting *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008)), the court observed that "even the least sophisticated debtor is 'bound to read collection notices in their entirety.' " *Id.* (quoting *Campuzano-Burgos*, 550 F.3d at 299). The plaintiff in *Christy*, the court found, "clearly did not follow his obligation under the FDCPA to 'read collection notices in their entirety' before bringing suit." *Id.* Had he done so, the court found, he would have immediately cleared up any confusion as to whether the debt collector was erroneously attempting to collect a debt from him that he did not owe. *Id.* at 655-56. The court also found that the alleged defect in the letter was too inconsequential to support a claim. *Id.* Therefore, the court granted summary judgment to the defendant. *Id.* at 656.

Likewise, Plaintiff here has not satisfied the obligation of the least sophisticated debtor the read the collection notice in its entirety—or indeed at all—prior to bringing suit. Plaintiff cannot allege to have been misled without first encountering the opportunity to be misled by reading the letter. "A false statement is only actionable under the FDCPA if it has the potential to affect the decision-making process of the least sophisticated debtor. *Jensen v. Pressler & Pressler,* 791 F.3d 413, 421 (3d Cir. 2015). Plaintiff has short circuited this analysis by not reading the Letter. An

15

unread letter has zero potential to affect anyone's decision-making process. Were this sufficient to state a claim under the FDCPA, anyone who receives debt collection letters could simply forward each one of them to counsel for an assessment and potential legal action, all without taking the time to even process the communication.

### C.     The Letter Was Not Misleading or Deceptive

Even had Plaintiff read the Letter in its entirety, the Letter is not actionable because it is not likely to mislead the least sophisticated debtor. "A debt collection letter is deceptive where it can reasonably be read to have two or more different meanings, one of which is inaccurate." *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 455 (3d Cir. 2006). Plaintiff essentially alleges that the statement that if she did not return "the attached affidavit (accompanied by any supporting documentation outlined within)" by May 24, 2019, "your claim will be closed and you will be held responsible for payment of all charges billed to your account" amounts to a threat of legal action. *See* ECF 1 at ¶¶ 32-41. As Plaintiff has produced no evidence that the Letter even implies a threat of legal action, her claims cannot survive summary judgment.

The Letter contains no improper threat of legal action. This stands in contrast to the letter reviewed in *Brown,* which stated that unless the plaintiff "made arrangements to pay her debt within five days, the matter 'could' result in referral of the account to [the collector's] attorney, and

16

'could' result in 'a legal suit being filed.' " *Brown*, 464 F.3d at 451. The Third Circuit found that this language could well give the least sophisticated debtor the impression that litigation or referral to an attorney would be imminent if she did not respond within five days. *Id.* at 455. In contrast, the Letter at issue includes no implication that a law suit may be filed or even that Plaintiff's Account may be referred to an attorney. *See* Ribeiro Decl. Ex. H. Plaintiff's preferred interpretation is the sort of "bizarre or idiosyncratic" interpretation for which the FDCPA prevents liability. *Wilson v. Quadramed Corp.*, 225 F.3rd 350, 355 (3d Cir. 2000).

Likewise, the Letter bears none of the other hallmarks of an improper threat of legal action. Such indicators can include "threats to sue, attach personal property, or use legal procedures if the payment is not made." *Powell v. Aldous & Assocs., P.L.L.C.*, Civ. No. 17-3770-KM-MAH, 2018 WL 278736, at *7 (D.N.J. Jan. 3, 2018). Like the letter under consideration in *Daniels v. Solomon & Solomon P.C.*, the Letter "neither explicitly nor implicitly threatens legal action" and is "devoid of legal jargon and … makes no reference to legal action whatsoever." *Daniels*, 751 F. App'x 254, 257 (3d Cir. 2018) (finding no threat of legal action in letter on law firm letterhead directing consumer to "act now to resolve this problem!"). As the language singled out by Plaintiff does not approach that found to constitute an improper threat of legal action, Plaintiff's claims fail as a matter of law.

17

Further, the overall context of the Letter makes clear that EOS seeks to investigate a dispute, not threaten suit. *See* Ribeiro Decl. Ex. H. "Whether a debt collector's communications threaten litigation in a manner that violate the FDCPA depends on the language of the letter, which should be analyzed from the perspective of the least sophisticated debtor." *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 32-33 (3d Cir. 2011). The statement that unless Plaintiff provides documentation to allow EOS to further investigate her dispute, she "will be held responsible for payment of all charges billed to your account" is simply a truism: People who incur debts, by obtaining a benefit now in exchange for a promise to pay later, are expected to pay those debts—in other words, to "be held responsible for payment of all charges billed to [their] account." As even the least sophisticated debtor is bound to read the entire letter with care, not even the least sophisticated debtor could interpret the Letter as a threat to sue. As such, summary judgment in favor of EOS is appropriate.

## VI.    CONCLUSION

Plaintiff has failed to meet her burden and thus cannot avoid summary judgment. Having suffered no injury in fact, she lacks Article III standing. Having not read the Letter, she has cannot be said to be misled or at a risk of being misled. Finally, even had Plaintiff read the Letter, it includes no implicit or explicit threat of legal action such that Plaintiff's

18

claims fail as a matter of law and fact. As no material issue of genuine fact can be in doubt, summary judgment in favor of EOS is appropriate and should be granted. EOS respectfully requests that judgment be entered in its favor and that the Court award such other and further relief as it deems just and equitable.

Dated:     New York, New York     Respectfully Submitted,
           June 1, 2021

           **GORDON REES SCULLY MANSUKHANI, LLP**

           Lori J. Quinn
           One Battery Park Plaza, 28th Fl.
           New York, New York 10004
           Phone: 212.453.0758
           Facsimile: 212.269.5500
           ljquinn@grsm.com
           *Attorneys for Defendant*
           *Collecto, Inc. d/b/a EOS CCA*


To:   Craig Sanders
      *Plaintiff's Counsel*

1207715/58677409v.1

19