# Exhibit J

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| **WILLIE HENDERSON,** | ) | |
| **INDIVIDUALLY AND ON BEHALF OF** | ) | |
| **ALL OTHERS SIMILARLY SITUATED,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 7:17-cv-00292** |
| | ) | |
| **GENERAL REVENUE CORPORATION,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **PIONEER CREDIT RECOVERY, INC.,** | ) | |
| | ) | |
| **And** | ) | |
| | ) | |
| **NAVIENT PORTFOLIO** | ) | |
| **MANAGEMENT, LLC** | ) | |
| | ) | |
| **Serve: Corporation Service Company** | ) | |
| **135 North Pennsylvania Street** | ) | |
| **Suite 1610** | ) | |
| **Indianapolis, IN 46204** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## SECOND AMENDED COMPLAINT

### INTRODUCTION

1. Willie Henderson brings this suit on behalf of himself and all those similarly situated against Defendants General Revenue Corporation, Pioneer Credit Recovery, Inc., and Navient Portfolio Management, LLC, to redress Defendants' violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, in their efforts to collect federal student loan debts from Plaintiff and others similarly situated. Plaintiff seeks on behalf of himself and the class members, class certification, statutory damages, actual damages, declaratory relief,

1

attorney's fees, and costs.

## JURISDICTION AND VENUE

2. Jurisdiction in this Court is proper under 15 U.S.C. § 1692(k) and 28 U.S.C. § 1331.

3. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) as a substantial part of the events and omissions giving rise to the claims occurred in this District.

## PARTIES

4. Willie Henderson is a natural person who resides in Roanoke, Virginia and is a "consumer" under 15 U.S.C. §1692a(3).

5. Defendant General Revenue Corporation ("GRC") is an Ohio corporation headquartered at 11501 Northlake Drive, Cincinnati, Ohio 45249-1643. GRC is a "debt collector" under 15 U.S.C. §1692a(6), because it uses instrumentalities of interstate commerce or the mails in a business, the principal purpose of which is the collection of debts, and/or regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another from consumers located across the Commonwealth of Virginia. GRC is a wholly-owned subsidiary of Asset Performance Group, LLC, which is a subsidiary of Navient Solutions, Inc., which is a subsidiary of Navient Corporation. Brian Hill, Eric Kiss, John Terry, Caryn Benton, Jack Frazier, Justen Gay, and Zenon Butts are officers of GRC.

6. Defendant Pioneer Credit Recovery, Inc. ("Pioneer") is a Delaware corporation headquartered at 26 Edward St., Arcade, New York 14009. Pioneer is a "debt collector" under 15 U.S.C. §1692a(6), because it uses instrumentalities of interstate commerce or the mails in a business, the principal purpose of which is the collection of debts, and/or regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to

another from consumers located across the Commonwealth of Virginia. Pioneer is a wholly-owned subsidiary of Asset Performance Group, LLC, which is a subsidiary of Navient Solutions, Inc., which is a subsidiary of Navient Corporation. Jeff Mersmann, Eric Kiss, John Terry, Caryn Benton, Chad Wilson, and Jack Frazier are officers of Pioneer.

7. Defendant Navient Portfolio Management, LLC ("NPM") is a Delaware limited liability company headquartered at 11100 USA Parkway, Fishers, IN 46037. NPM is a "debt collector" under 15 U.S.C. §1692a(6), because it uses instrumentalities of interstate commerce or the mails in a business, the principal purpose of which is the collection of debts, and/or regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another from consumers located across the Commonwealth of Virginia. Upon information and belief, NPM is a subsidiary of Navient Corporation. Douglas St. Peters is the President of NPM.

## FACTUAL ALLEGATIONS

8. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3).

9. In or around 1995, Plaintiff obtained a federal student loan in the amount of $13,670.77 to attend ECPI. Plaintiff has intermittently made payments on this loan from 1997 through 2015 when finances permitted.

10. Plaintiff's federal student loans are "debts" as that term is defined by the FDCPA.

11. Plaintiff is a debtor with federal student loans that were placed into default status.

12. Upon default, the guaranty agency, in this case United Student Aid Funds ("USAF"), pays the lender and takes assignment of the loan.

13. Pursuant to a "Master Servicing Agreement" between USAF and NPM, attached as

3

Case 7:17-cv-00392-KMK-ESR Document 110 Filed 08/21/19 Page 4 of 35 PageID#: 888
Case 2:20-cv-01337-KM-ESK Document 34-2 Filed 07/09/21 Page 5 of 135 PageID:
330

**Exhibit G**,[1] USAF may place defaulted student loans with NPM for portfolio management and collection services. NPM is compensated by a certain percentage of the combined principal and interest of the loan it is servicing according to a schedule. Furthermore, the agreement allows NPM to utilize the services of subordinate servicers for the purposes of effectuating collection of defaulted student loans, but provides that NPM has sole responsibility for contracting with, compensation, oversight, and audit of such subordinate servicers.

14. Upon information and belief, Plaintiff's debt was assigned, purchased, placed or otherwise transferred by USAF to NPM for collection purposes.

15. Pursuant to an "Agreement for Collection Services" between NPM and GRC, attached as **Exhibit H**, NPM may place defaulted loan accounts of its choosing with GRC for collection, loan rehabilitation, loan consolidation, and administrative wage garnishment.

16. Upon information and belief, the "Agreement for Collection Services" between NPM and GRC was received by GRC from NPM or Navient Corporation, and GRC did not negotiate any of the terms of the agreement.

17. Under the "Agreement for Collection Services" between NPM and GRC, NPM exercises a high degree of control over GRC's collection activities, as shown by, *inter alia*, the following terms of the agreement:

a. The number and type of defaulted loan accounts placed with GRC are at NPM's sole discretion.

b. NPM has the right, in its sole discretion, to recall any or all defaulted student loan

---

[1] The attached "Master Services Agreement" was entered into September 1, 2017. However, upon information and belief, a "Master Services Agreement" or substantially similar agreement was in effect between USAF and NPSM at all times relevant to this case.

accounts placed with GRC at any time.

c. GRC must comply with NPM's policies and procedures.

d. GRC can undertake administrative wage garnishment activities only at NPM's sole discretion.

e. GRC is compensated only on a commission basis, and NPM has the right to decrease the commission at its discretion upon notice.

18. Upon information and belief, GRC does not deal with guarantors such as USAF directly; rather, GRC obtains all of its information about any defaulted student loan through NPM.

19. Pursuant to an "Agreement for Collection Services" between NPM and Pioneer, attached as **Exhibit I**, NPM may place defaulted loan accounts of its choosing with Pioneer for collection, loan rehabilitation, loan consolidation, and administrative wage garnishment.

20. Upon information and belief, the "Agreement for Collection Services" between NPM and Pioneer was received by Pioneer from NPM or Navient Corporation of NPM, and Pioneer did not negotiate any of the terms of the agreement.

21. Under the "Agreement for Collection Services" between NPM and Pioneer, NPM exercises a high degree of control over Pioneer's collection activities, as shown by, *inter alia*, the following terms of the agreement:

a. The number and type of defaulted loan accounts placed with Pioneer are at NPM's sole discretion.

b. NPM has the right, in its sole discretion, to recall any or all defaulted student loan accounts placed with Pioneer at any time.

c. Pioneer must comply with NPM's policies and procedures.

d. Pioneer can undertake administrative wage garnishment activities only at NPM's sole discretion.

e. Pioneer is compensated only on a commission basis, and NPM has the right to decrease the commission at its discretion upon notice.

22. Upon information and belief, Pioneer does not deal with guarantors such as USAF directly; rather, Pioneer obtains all of its information about any defaulted student loan through NPM. Upon information and belief, NPM assigned, placed or otherwise transferred Plaintiff's debt to Defendant GRC for collection purposes, and later assigned, placed or otherwise transferred Plaintiff's debt to Defendant Pioneer for collection purposes.

23. Upon information and belief, Navient Corporation issues consolidated annual reports and SEC filings which include Pioneer and GRC. Also, Navient issues consolidated financial statements and balance sheets for itself and its subsidiaries, including Pioneer and GRC.

24. Pursuant to federal regulations, the guaranty agency (USAF), after it pays a default claim on a loan, but, before it reports the default to a consumer reporting agency or *assesses collection costs against a borrower*, shall, within forty-five days, provide the borrower with a written notice that meets the requirements of 34 C.F.R. § 682.410 (b)(5)(vi), an opportunity to inspect and copy agency records pertaining to the loan obligation, an opportunity for an administrative review of the legal enforceability or past-due status of the loan obligation, and an opportunity to enter into a repayment agreement on terms satisfactory to the agency. 34 C.F.R. § 682.410(b)(5)(ii); 34 C.F.R. § 682.410(b)(6)(ii).

25. The deadline established by the agency for requesting administrative review under 34

C.F.R. § 682.410(b)(5)(ii)(C) must allow the borrower *at least 60 days* from the date the notice

described in 34 C.F.R. § 682.410(b)(5)(ii)(A) is sent to request that review. 34 C.F.R. §

682.410(b)(5)(iv)(B) (emphasis added).

26. Federal regulations also require the inclusion of certain information in the notice of

default. The required information consists, in part, of the following:

a. Identification of the school for attendance at which the loan was made. 34 C.F.R. § 682.410(b)(5)(vi)(B).

b. An explanation of the interest rate on the loan, the authority for assessing the costs, and how the agency will calculate the amount of the costs. 34 C.F.R. § 682.410(b)(5)(vi)(E).

c. Explain the opportunities available to the borrower under agency rules to request access to the agency's records on the loan … 34 C.F.R. § 682.410(b)(5)(vi)(G).

d. A description of the grounds on which the borrower may object that the loan obligation as stated in the notice is not a legally enforceable debt owed by the borrower. 34 C.F.R. § 682.410(b)(5)(vi)(I).

e. A description of the options that are available to the borrower to remove the loan from default, including an explanation of the fees and conditions associated with each option. 34 C.F.R. § 682.410(b)(5)(vi)(M).

27. Federal regulations outline specific requirements prior to administrative wage

garnishment which must be followed by a debt collector. 34 C.F.R. § 682.410(b)(9)(i).

a. In part, it is required that at least 30 days before the initiation of garnishment proceedings, the guaranty agency must mail to the borrower's last known address, a written notice which must describe: (1) the nature and amount of the debt; (2) the intention of the agency to collect the debt through deductions from disposable pay; (3) an explanation of the borrower's rights; (4) the deadlines by which a borrower must exercise those rights; and (5) the consequences of failure to exercise those rights in a timely manner. 34 C.F.R. § 682.410(b)(9)(i)(A) and (B) (emphasis added).

b. The guaranty agency must offer the borrower an opportunity to inspect and copy agency records related to the debt. 34 C.F.R. § 682.410(b)(9)(i)(C) (emphasis added).

c. The guaranty agency must offer the borrower an opportunity to enter into a written repayment agreement with the agency under terms agreeable to the agency. 34 C.F.R. §

682.410(b)(9)(i)(D).

d. The guaranty agency must offer the borrower an opportunity for a hearing in accordance with paragraphs (b)(9)(i)(F) through (J) and other guidance provided by the Secretary, for any objection regarding the existence, amount, or *enforceability* of the debt, and any objection that withholding from the borrower's disposable pay in the amount or at the rate proposed in the notice would cause financial hardship to the borrower. 34 C.F.R. § 682.410(b)(9)(i)(E)(1) (emphasis added).

e. The borrower must request a hearing in writing. At the borrower's option, the hearing may be oral or written. The time and location of the hearing is established by the guaranty agency. An oral hearing may, at the borrower's option, be conducted either in-person or by telephone conference. The agency notifies the borrower of the process for arranging the time and location of an oral hearing. All telephonic charges are the responsibility of the agency. All travel expenses incurred by the borrower relating to an in-person oral hearing are the responsibility of the borrower. 34 C.F.R. § 682.410(b)(9)(i)(E)(2).

f. If the borrower submits a written request for a hearing on the existence, amount or enforceability of the debt, *the guaranty agency must provide evidence of the existence of the debt.* If the agency provides evidence of the existence of the debt, the borrower must prove by the preponderance of the evidence that no debt exists, the debt is not enforceable under applicable law, the amount the guaranty agency claims the borrower owes is incorrect, including that any amount of collection costs assessed to the borrower exceeds the limits established under § 682.410(b)(2), or the debt is not delinquent. 34 C.F.R. § 682.410(b)(9)(i)(F)(1)(i) (emphasis added).

g. If the borrower submits a written request for hearing on an objection that withholding in the amount or at the rate that the agency proposed in its notice would cause financial hardship to the borrower and the borrower's spouse and dependents, the borrower bears the burden of proving the claim of financial hardship by a preponderance of the credible evidence by providing credible documentation that the amount of wages proposed in the notice would leave the borrower unable to meet basic living expenses of the borrower, the borrower's spouse, and the borrower's dependents. The documentation must show the amount of the costs incurred for basic living expenses and the income available from any source to meet those expenses. 34 C.F.R. § 682.410(b)(9)(i)(F)(2)(i).

h.  If the borrower's written request for a hearing is received by the guaranty agency on or before the 30th day following the date of the notice described in paragraph (b)(9)(i)(B) …., the guaranty agency may not issue a withholding order until the borrower has been provided the requested hearing and a decision has been rendered. The guaranty agency must provide a hearing to the borrower in sufficient time to permit a decision, in accordance with the procedures that the agency may prescribe, to be rendered within 60 days. 34 C.F.R. § 682.410(b)(9)(i)(G).

i. An employer served with a garnishment order from the guaranty agency with respect to a borrower whose wages are not then subject to a withholding order of any kind must deduct and pay to the agency from a borrower's disposable pay an amount that does not exceed the smallest of: (1) the amount specified in the guaranty agency order; (2) the amount permitted by section 488A(a)(1) of the Act, which is 15 percent of the borrower's disposable pay; or (3) *the amount permitted by 15 U.S.C. 1673(a)(2), which is the amount by which the borrower's disposable pay exceeds 30 times the minimum wage.* 34 C.F.R. § 682.410(b)(9)(i)(K) (emphasis added).

j. "Disposable pay" means that part of a borrower's compensation for personal services, whether or not denominated as wages, from an employer, *that remains after the deduction of health insurance premiums* and any amounts required by law to be withheld, and includes, but is not limited to, salary, bonuses, commissions or vacation pay. "Amounts required by law to be withheld" include amounts for deductions such as Social Security taxes and withholding taxes, but do not include any amount withheld under a court order or other withholding order. All references to an amount of disposable pay refer to disposable pay calculated for a single week. 34 C.F.R. § 682.410(b)(9)(ii)(C) (emphasis added).

k. "Financial hardship" means an inability to meet basic living expenses for goods and services necessary for the survival of the borrower and the borrower's spouse and dependents. 34 C.F.R. § 682.410(b)(9)(ii)(E).

28. Upon information and belief, on February 6, 2017, NPM placed Plaintiff's account with GRC, a member of Navient Corporation's Collection Services.

29. Defendant GRC sent Plaintiff a communication entitled "Defaulted Loans," dated February 7, 2017, attempting to collect student loan debt.

30. The communication, attached as **Exhibit A**, listed USAF as the creditor, principal of $102,174.81, interest of $1,861.86, and collection charge of $20,430.70.

31. Upon information and belief, Plaintiff does not owe the amounts listed in the communication.

32. **Exhibit A** states: "Unless you notify this office within *30 days* after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this

9

debt is valid. If you notify this office in writing within *30 days* from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within *30 days* after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor." (emphasis added).

33. The communication further states: "Failure to pay the account in full, agree to a satisfactory repayment arrangement, or utilize another recovery option may result in additional collection efforts, including: Contacting your employer to determine eligibility for administrative wage garnishment."

34. The communication did not identify the school for attendance at which the loan was made.

35. The communication did not explain how the collection costs are calculated, or the authority for collecting them.

36. The communication did not explain the opportunities available to the borrower under agency rules to request access to the agency's records on the loan, or provide deadlines and methods for requesting this relief.

37. The communication did not describe the grounds on which the borrower may object that the loan obligation as stated in the notice is not a legally enforceable debt owed by the borrower.

38. The communication failed to inform the borrower of the fees and conditions associated with the options available to the borrower to remove the loan from default.

39. The communication failed to allow the borrower at least 60 days from the date the notice is sent to request administrative review.

40. The communication threatened to contact Plaintiff's employer to determine eligibility for administrative wage garnishment, even though GRC had not complied with the requirements of 34 C.F.R. § 682.410(b)(9).

41. The communication improperly stated that if Plaintiff arranged acceptable repayment terms, a portion of each payment received may be allocated to pay collection costs, and that collection costs may be assessed on the Plaintiff's account 60 days after the default claim purchase.

42. On February 28, 2017, Plaintiff wrote to GRC advising it that he disputed the validity of the debt, and asked GRC to provide verification of the debt, identifying the original amount of the loan, all payments made to date, the name of the original creditor and all subsequent creditors in case the debt had been sold at any time since its origination. Plaintiff also demanded that GRC cease all communications with him or his family members at home, at work, or to cellphone numbers, except for communications necessary for debt verification. **Exhibit B**, 2/28/17 letter.

43. GRC ignored Plaintiff's request to provide verification and documentation.

44. On April 24, 2017, Plaintiff sent another letter to GRC, advising that he disputed the validity of the debt, and asking GRC to provide verification of the debt, identifying the original amount of the loan, all payments made to date, the name of the original creditor and all subsequent creditors in case the debt had been sold at any time since its origination. Plaintiff also demanded that GRC cease all communications with him or his family members at home, at work, or to cellphone numbers, except for communications necessary for debt verification.

11

**Exhibit C**, 4/24/17 letter.

45. GRC ignored Plaintiff's second request. Instead of GRC providing the demanded information, Plaintiff received a "Statement of Purchased Account," from United Student Aid Funds, indicating that Plaintiff now owed principal of $102,174.81, interest of $3,826.98, and collection costs of $20,430.70, for a total of $126,432.49. **Exhibit D**, 4/26/17 Statement of Purchased Account. GRC failed to acknowledge that Plaintiff disputed the debt, failed to provide verification of the debt, failed to identify the original amount of the loan, all payments made to date, the name of the original creditor, and the names of all subsequent creditors if the debt had been sold at any time since its origination.

46. Upon information and belief, on September 25, 2017, NPM transferred Plaintiff's account to Pioneer Credit Recovery, Inc., another member of Navient Corporation's Collection Services.

47. Upon information and belief, NPM transferred Plaintiff's account to Pioneer to circumvent Plaintiff's lawful demand for verification of the debt, pursuant to 15 U.S.C. § 1692g(b), and Plaintiff's lawful demand, pursuant to 15 U.S.C. § 1692c(c), that Defendants cease communication with him regarding the debt. Furthermore, the debt was transferred so that Pioneer could assess additional collection costs.

48. On September 30, 2017, Plaintiff received a collection letter from Pioneer Credit Recovery, Inc., after Plaintiff had sent two cease communications requests. The letter states that Plaintiff owes principal in the amount of $102,174.81, interest in the amount of $7,681.62, and collection costs in the amount of $21,159.26. This letter does not contain the validation/verification notice required by 15 U.S.C. § 1692g(a), and the letter improperly

12

assesses additional collection costs. **Exhibit E**, 9/30/17 Collection letter from Pioneer.

49. Plaintiff received an undated notice from Pioneer, on behalf of USA Funds, regarding administrative garnishment. The notice is not dated, but is postmarked November 1, 2017, and the third page of the notice contains the date October 28, 2017. **Exhibit F** – Garnishment Letter from USA Funds/Pioneer.

50. Upon information and belief, Pioneer sent this notice (**Exhibit F**) in accordance with 34 C.F.R. § 682.410(b)(9), which is required prior to the institution of an administrative wage garnishment by a guaranty agency. However, the notice did not comply with all requirements of the regulation.

51. The following statements appear on the first page of the notice:

You are given notice that United Student Aid Funds Inc. … will order your employer to immediately withhold money from your pay … for payment of your defaulted student loan(s), unless you take the action set forth in this notice.

*** 

**To avoid your wages being garnished, you must establish a repayment agreement with Pioneer Credit Recovery, Inc. on or before 11/27/2017.**

Otherwise, United Student Aid Funds Inc will proceed to collect this debt through deductions from your pay. UNLESS YOU ACT BY 11/27/2017, YOUR EMPLOYER WILL BE ORDERED TO DEDUCT from your pay an amount equal to no more than fifteen percent (15%) of your disposable pay for each pay period, or the amount permitted by 15 U.S.C. 1673 … to repay your student loan(s) held by the United Student Aid Funds Inc. Disposable pay includes pay remaining after all deductions required by law have been withheld (such as social security and federal and state income taxes)…

52. Page two of the letter provides in part:

You have the following rights regarding this action:

You have an opportunity to inspect and/or request copies of Pioneer Credit Recovery, Inc. records relating to your debt. *Basic information about your debt*

*will be provided free of charge along with our response to your hearing request.* All requests for documentation must be in writing. Telephone requests will not be honored. Please take note that a request for documents, by itself, will not prevent garnishment of your wages. (Emphasis added).

You have the opportunity to avoid wage garnishment by immediately remitting the balance in full, or by entering into a repayment agreement with Pioneer Credit Recovery, Inc. to establish a satisfactory schedule for repayment of this debt. To obtain information on entering into a repayment agreement, call 1-888-272-7812, and speak to a wage garnishment specialist.

You have the right to object to the proposed garnishment, and you have the opportunity for a hearing on your objection. You may raise as objections: 1) the existence of the debt; or 2) the amount of the debt; or 3) that making installment payments in amounts equal to 15% of your disposable pay, or having payments in that amount withheld from your disposable pay would constitute an extreme financial hardship.

53. Page two of the letter continues that Plaintiff must complete the enclosed form and return it to Pioneer Credit Recovery, Inc. by *11/27/2017*. Pioneer Credit Recovery, Inc. must receive the written request for a hearing by *11/27/2017*, in order to prevent a Withholding Order from being issued by Plaintiff's employer. (Emphasis added).

54. Page 4 of the letter includes: PART II: <u>REASONS WHY YOU OBJECT TO GARNISHMENT</u>, which provides in part:

CHECK one or more reasons that apply. Explain any further facts concerning your objection on a separate sheet of paper. *You have the burden of proving any claims raised by your objection(s).* The hearing on your objection(s) will be conducted based on the information on this form, any documentation you provide, and the documentation maintained by the United Student Aid Funds Inc. *Please note that failure to provide written proof of your objection(s) may result in a hearing official issuing a decision to deny your objection(s) as unsubstantiated.* (Emphasis added).

55. On page 5 of the letter, the final option to choose for objecting to the garnishment provides as follows:

I believe that this loan is not an enforceable debt in the amount stated for the

14

reasons explained in the attached letter. (Attach a letter with any supporting documentation explaining any reason other than those listed above, including, for example, that the loan was obtained by another person through the crime of theft of your identity, for your objection to collection of this loan amount by garnishment of your salary.)

56. The notice sent by Pioneer on behalf of USAF does not provide the Plaintiff with 30 days prior to the initiation of garnishment proceeding.

57. The notice does not describe the nature and amount of the debt.

58. The notice does not provide a clear explanation of the Plaintiff's rights.

59. The notice fails to clearly inform Plaintiff that he has a right to contest the enforceability of the debt.

60. The notice fails to inform Plaintiff that the garnishment amount cannot exceed the amount by which the borrower's disposable pay exceeds 30 times the minimum wage.

61. The notice fails to inform Plaintiff that the guaranty agency must provide evidence of the existence of the debt if the borrower submits a written request for a hearing.

62. The notice fails to offer Plaintiff an opportunity to inspect and copy agency records related to the debt.

63. The notice does not inform Plaintiff that "disposable pay" means that part of a borrower's compensation that remains after the deduction of health insurance premiums and any amounts required by law to be withheld.

64. The notice does not inform Plaintiff that "financial hardship" means an inability to meet basic living expenses for goods and services necessary for the survival of the borrower and the borrower's spouse and dependents.

65. These described acts and omissions of the Defendants injured Plaintiff and proposed

15

class members in a concrete way. Because of Defendants' acts and omissions, Plaintiff and proposed class members were subjected to threats and collection attempts from Defendants, which used unfair and unconscionable means to collect a debt and contained material misrepresentations that deceptively and misleadingly concealed from Plaintiff and proposed class members rights which Congress has put in place to protect and safeguard student loan borrowers, as set forth in 34 C.F.R. § 682.410.

66. The described acts and omissions of Defendants injured Plaintiff and proposed class members in a particularized way, in that Defendants were obligated by the FDCPA to supply accurate and non-misleading information to Plaintiff and proposed class members, specifically, because Defendants were attempting to collect a debt. Moreover, Defendant GRC was obligated to not engage in collection efforts where Plaintiff and proposed class members had not been advised of all their rights under 34 C.F.R. 682.410(b)(5) and (6). Defendant Pioneer was obligated by 34 C.F.R. § 682.410 to supply full and accurate information concerning the administrative wage garnishment. The failure of Defendants to provide the required notices, and other violations of the Fair Debt Collection Practices Act, have resulted in injuries to Plaintiff and the proposed class.

## CLASS ALLEGATIONS

67. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

68. Under Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action individually and on behalf of a himself and all other similar situated. Specifically, Plaintiff seeks to represent two classes of individuals, preliminarily defined as follows:

CLASS "A"

All natural persons who are residents of Virginia who are similarly situated to Plaintiff in that, within one year of the commencement of this action and continuing to the date that an order is entered certifying this class, Defendant GRC sent them a letter in a form substantially similar or materially identical to **Exhibit A**.

CLASS "B"

All natural persons who are residents of Virginia who are similarly situated to Plaintiff in that, within one year of the commencement of this action and continuing to the date that an order is entered certifying this class, Defendant Pioneer sent them a letter in a form substantially similar or materially identical to **Exhibit F**.

69. The proposed Classes are so numerous that joinder of all members would be impracticable. Plaintiff does not know the size of each class, but this information is known by Defendants and readily ascertainable by discovery. Based upon available information concerning Defendants, the size of their operations, and their specialization in the collection of student loans, Plaintiff estimates and alleges that there are hundreds and, probably, thousands of individuals in each class.

70. There is a community of interest among proposed class members in that there are questions of law and fact common to the proposed Classes that predominate over questions affecting only individual members.

71. Plaintiff's claims are typical of those of the Classes that he seeks to represent. Plaintiff is also entitled to relief under the same causes of action as other members of the putative classes.

72. Plaintiff is represented by counsel competent and experienced in consumer protection specific to students, and class action litigation, and he has no conflicts with proposed class

17

members.

73. Common questions of law and fact predominate over individual questions, in that the letters are form letters, and any individual questions are subordinate to the common questions.

74. Common questions for CLASS A include but are not limited to:

a. Was Defendant GRC's communication dated February 7, 2017 in violation of the FDCPA because Plaintiff and potential class members had not:

i. received the correct information about the time in which a borrower must request an administrative review of the legal enforceability or past-due status of his or her account;

ii. been provided with the required 60 days to request an administrative review of the legal enforceability or past-due status of his or her account;

iii. been notified of the school for attendance at which the loan was made;

iv. been provided an interest rate or an explanation of how the costs are calculated, or the authority for collecting them;

v. been provided an explanation on how collection costs would be calculated;

vi. been provided an explanation as to the opportunities available under agency rules to request access to the agency's records on the loan;

vii. been provided a description as to the grounds on which the borrower may object that the loan obligation is not a legally enforceable debt;

viii. been provided with information on the fees and conditions associated with each option to remove the loan from default; and

18

b. Did GRC and NPM violate the FDCPA because the February 7, 2017 communication:

i. assessed collection charges when the borrower had not received the required notices explaining the way collection costs would be calculated;

ii. stated that collection costs may be assessed 60 days after the default claim purchase;

iii. threatened to contact borrower's employer to determine eligibility for administrative wage garnishment when it could not legally take such action;

iv. implied that nonpayment of the debt would result in garnishment of borrower's wages when, instead, Defendant must first comply with rigid statutory procedures to garnish borrower's wages;

xiii. conveyed a false sense of urgency by threatening to take actions which it cannot legally; and

c. If the communication was in violation of the FDCPA, what statutory damages should be awarded?

75. Common questions of law and fact predominate over individual questions, in that the letters are form letters, and any individual questions are subordinate to the common questions. Common questions for CLASS B include but are not limited to:

a. Was Defendant Pioneer's letter regarding administrative wage garnishment in violation of the FDCPA because of the following flaws, considered individually or in combination:

i. Misstating that Pioneer will immediately order borrower's employer to withhold money from the borrower's pay when such action could not be taken

19

immediately, legally;

ii. Failing to provide borrower with the nature and amount of the debt;

iii. Misstating that to avoid wages being garnished, the borrower must establish a repayment agreement with Pioneer on or before 11/27/2017 when other options were available to borrower to avoid garnishment;

iv. Misstating that "disposable pay" includes pay remaining after all deductions required by law (such as social security and federal and state taxes), when health insurance premiums are also deducted from "disposable pay;"

v. Misstating the amount of wages that can be deducted from borrower's pay by failing to inform borrower that no more than the amount by which the borrower's disposable earnings exceed thirty times the federal minimum hourly wage can be deducted;

vi. Failing to provide a clear explanation of the borrower's rights;

vii. Failing to offer the borrower an opportunity to inspect and copy agency records related to the debt by implying that borrower cannot obtain these records for free and that borrower can only obtain these records in the context of requesting a hearing, when federal law provides borrower an absolute right to inspect and copy the records relating to his debt;

viii. Misstating the objections which a borrower may raise in a hearing and failing to advise the borrower that the borrower can raise enforceability of the debt as an objection to the proposed garnishment when federal law requires the inclusion of such information;

20

ix.  Failing to provide the borrower 30 days prior to the initiation of garnishment proceedings;

x. Misstating the burden of proof upon the borrower when federal law provides that the burden is upon the creditor to prove the existence of the debt;

xi. Failing to provide the borrower 30 days to request a hearing;

xii. Requiring borrower to submit documentation to obtain a hearing when federal law provides that the borrower's right to a hearing is unconditional;

xiii. Failing to adequately explain the meaning of "financial hardship"; and

xiv. Conveying a false sense of urgency by threatening to take actions it cannot legally take in violation of federal law.

b. If the notice regarding administrative garnishment was in violation of the FDCPA, what statutory damages should be awarded?

76. A class action is superior to other methods for the fair and efficient adjudication of the controversy. Because the damages suffered by individual class members are relatively small compared to the expense and burden of litigation, it would be impractical and economically unfeasible for class members to seek redress individually. The prosecution of separate actions by individual class members, even if possible or likely, would create a risk of inconsistent or varying adjudications and could create incompatible standards of conduct for Defendants. Moreover, because most proposed class members are unaware of their rights under 34 C.F.R. § 682.410, they are unlikely to bring independent actions, and a class action is the only way that these violations can be rectified.

# CAUSES OF ACTION

## COUNT ONE - INDIVIDUAL CLAIM FOR VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. § 1692e
### (Against Defendants GRC, Pioneer, and NPM)

77. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

78. Plaintiff is a "consumer" under 15 U.S.C. § 1692a(3).

79. Defendants are "debt collectors" under 15 U.S.C. § 1692a(6).

80. The amount Defendants sought to collect from Plaintiff is a "debt" under 15 U.S.C. § 1692a(5).

81. The February 7, 2017 letter captioned "Defaulted Loans" mailed by Defendant GRC to Plaintiff is a communication under 15 U.S.C. §1692a(2).

82. Defendant GRC's communication asserted that Defendant GRC had the legal right to collect principal in the amount of $102,174.81, interest in the amount of $1,861.86, and collection charges in the amount of $20,430.70.

83. The September 30, 2017 letter and undated letter mailed November 1, 2017 regarding garnishment mailed by Defendant Pioneer to Plaintiff are communications under 15 U.S.C. §1692a(2).

84. Defendant Pioneer's communication of September 30, 2017 asserted that it had the legal right to collect principal in the amount of $102,174.81, interest in the amount of $7,681.62, and collection charges in the amount of $21,159.26. Defendant Pioneer's undated letter mailed November 1, 2017 regarding garnishment asserted that it had the legal right to collect $131,821.89.

85. Both Pioneer and GRC are agents of NPM, and Pioneer, GRC, and NPM are related

22

entities in that Navient Corporation is the parent of NPM and the great-grandparent of GRC and Pioneer.

86. Defendant NPM is vicariously liable for the actions of its agents, GRC and Pioneer.

87. Defendants' assertions that they had the legal right to collect the amounts set forth in paragraphs 71 and 73 comprised the use of a false, deceptive, or misleading representation or means in violation of 15 U.S.C. § 1692e. Plaintiff denies that he owes these amounts.

88. Defendants' assertions that they had the legal right to collect the amounts set forth in paragraphs 71 and 73, comprised a false representation of the character, amount, or legal status of the debt, as well as a false representation of the services rendered or the compensation which may be lawfully received for its collection of the debt in violation of 15 U.S.C. § 1692e(2)(A).

89. Because of Defendants' violations of the FDCPA, Plaintiff has suffered anxiety, stress, emotional distress, embarrassment, and other damages.

### COUNT TWO - INDIVIDUAL CLAIM FOR VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. § 1692g
**(Against Defendants GRC and NPM)**

90. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

91. Plaintiff is a "consumer" under 15 U.S.C. §1692a(3).

92. Defendant GRC is a "debt collector" under 15 U.S.C. §1692a(6).

93. Defendant NPM is a "debt collector" under 15 U.S.C. §1692a(6).

94. The amount Defendants GRC and NPM sought to collect from Plaintiff is a "debt" under 15 U.S.C. § 1692a(5).

95. The February 7, 2017 letter captioned "Defaulted Loans" mailed by Defendant GRC to Plaintiff is a communication under 15 U.S.C. §1692a(2).

23

96. Plaintiff notified Defendant GRC on 2/28/17 and 4/24/17 that he disputed the validity of the debt, and demanded verification of the debt, identifying the original amount of the loan, all payments made to date, and the name of the original creditors if the debt had been sold at any time since its origination.

97. Defendant GRC failed to provide the required verification, thus it should have ceased collection of the debt pursuant to 15 U.S.C. § 1692g(b).

98. Upon information and belief, Defendant NPM transferred the Plaintiff's account to Defendant Pioneer on September 25, 2017, in part to circumvent the requirement that Defendant GRC cease collection until it had provided the required verification. Both Pioneer and GRC are agents of NPM, and Pioneer, GRC, and NPM are related entities in that Navient Corporation is the parent of NPM and the great-grandparent of GRC and Pioneer.

99. Defendant GRC failed to provide the required verification and, upon information and belief, did not cease collection. Further, NPM continued collection, including through its agents GRC and Pioneer.

100. Defendant NPM is vicariously liable for the actions of NPM's agents, GRC and Pioneer.

101. Defendants GRC's and NPM's actions violate 15 U.S.C. §1692g(b).

102. Because of Defendants GRC's and NPM's violation of the FDCPA, Plaintiff has suffered anxiety, stress, emotional distress, embarrassment, and other damages.

**COUNT THREE - INDIVIDUAL CLAIM FOR VIOLATION OF
FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. § 1692c
(Against Defendants GRC, Pioneer, and NPM)**

103. Plaintiff incorporates by reference herein the preceding paragraphs of this

24

Complaint.

104. Plaintiff is a "consumer" under 15 U.S.C. §1692a(3).

105. Defendants are "debt collectors" under 15 U.S.C. §1692a(6).

106. The amount Defendants sought to collect from Plaintiff is a "debt" under 15 U.S.C. § 1692a(5).

107. The February 7, 2017 letter captioned "Defaulted Loans" mailed by Defendant GRC to Plaintiff is a communication under 15 U.S.C. §1692a(2).

108. Plaintiff notified Defendant GRC on 2/28/17 and 4/24/17 that he disputed the validity of the debt, and demanded that Defendant cease all communications with Plaintiff or his family members at home, at work, or to cellphone numbers.

109. Upon information and belief, Defendant NPM transferred the Plaintiff's account to Pioneer in part to circumvent the requirement that Defendant GRC must cease communications with Plaintiff after receiving his letters of 2/28/17 and 4/24/17. Both Pioneer and GRC are agents of NPM, and Pioneer, GRC, and NPM are related entities in that Navient Corporation is the parent of NPM and the great-grandparent of GRC and Pioneer.

110. Pioneer contacted Plaintiff by letter dated 9/30/2017, in violation of Plaintiff's demand that Defendants cease all communications with Plaintiff.

111. Defendant NPM is vicariously liable for the actions of NPM's agent, Pioneer, and Plaintiff's directive to Defendant GRC can be imputed to Defendants Pioneer and NPM. Alternatively, to the extent that Pioneer acted as the agent of GRC with regard to this communication, GRC is likewise liable for the actions of Pioneer.

112. Defendants violated 15 U.S.C. §1692c(c) when they contacted Plaintiff after he

25

demanded that communications cease.

113. Because of Defendants' violation of the FDCPA, Plaintiff has suffered anxiety, stress, emotional distress, embarrassment, and other damages.

### COUNT FOUR - INDIVIDUAL CLAIM FOR VIOLATION OF
### FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. § 1692g(a)
### (Against Defendants Pioneer and NPM)

114. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

115. Plaintiff is a "consumer" under 15 U.S.C. §1692a(3).

116. Defendant Pioneer is a "debt collector" under 15 U.S.C. §1692a(6).

117. Defendant NPM is a "debt collector" under 15 U.S.C. §1692a(6).

118. The amount Defendants Pioneer and NPM sought to collect from Plaintiff is a "debt" under 15 U.S.C. § 1692a(5).

119. The September 30, 2017 letter mailed by Defendant Pioneer to Plaintiff is a communication under 15 U.S.C. § 1692a(2).

120. Pioneer was required, pursuant to 15 U.S.C. § 1692g(a), to provide Plaintiff with a written notice within five days of sending its initial communication, containing:

> 1. The amount of the debt;
>
> 2. The name of the creditor to whom the debt is owed;
>
> 3. A statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> 4. A statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the

consumer by the debt collector; and

5. A statement that upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

121. Pioneer did not give Plaintiff the notice required under 15 U.S.C. §1692g(a).

122. Pioneer is an agent of NPM, and Pioneer and NPM are related entities in that Navient Corporation is the parent of NPM and the great-grandparent of Pioneer.

123. Defendant NPM is vicariously liable for the actions of its agent, Pioneer.

124. Defendants Pioneer's and NPM's actions violated 15 U.S.C. § 1692g(a).

125. Because of Defendants Pioneer's and NPM's violation of the FDCPA, Plaintiff has suffered anxiety, stress, emotional distress, embarrassment, and other damages.

**COUNT FIVE - CLASS "A" CLAIM FOR VIOLATION OF
FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. § 1692e and 1692f
(CLASS "A" against Defendants GRC and NPM)**

126. Plaintiff incorporates by reference herein paragraphs 1 through 65 of this Complaint.

127. Plaintiff is a "consumer" under 15 U.S.C. §1692a(3).

128. Defendant GRC is a "debt collector" under 15 U.S.C. §1692a(6).

129. Defendant NPM is a "debt collector" under 15 U.S.C. §1692a(6).

130. The amount Defendants GRC and NPM sought to collect from Plaintiff is a "debt" under 15 U.S.C. §1692a(5).

131. Defendant GRC sent Plaintiff a communication attempting to collect his student loan debt. **See Exhibit A**.

132. Defendant sent the same communication to hundreds or thousands of other consumers in Virginia who owed a defaulted student loan debt during the time period described

27

in the Class A definition. *See* para. 57.

133. The communication violates §1692e and §1692f because it falsely represents the character, amount or legal status of the debts, it employs false representations and deceptive means to collect a debt and to obtain information concerning a consumer, and uses unfair and unconscionable means to collect and attempt to collect debts from Plaintiff and proposed class members.

   a. The communication violates the rights of Plaintiff and potential class members because they had not been advised of their rights under 34 C.F.R. 682.410(b)(5) and (6). Specifically, Plaintiff and potential class members had not:

   i. received the correct information about the time in which a borrower has to request an administrative review of the legal enforceability or past-due status of his or her loan;

   ii. been provided with the required 60 days to request an administrative review of the legal enforceability or past-due status of his or her loan;

   iii. been notified of the school for attendance at which the loan was made;

   iv. been provided an interest rate or an explanation of how the costs are calculated, or the authority for collecting them;

   v. been provided an explanation on how collection costs would be calculated;

   vi. been provided an explanation as to the opportunities available under agency rules to request access to the agency's records on the loan;

   vii. been provided a description as to the grounds on which the borrower may object that the loan obligation is not a legally enforceable debt;

28

viii. been provided with information on the fees and conditions associated with each option to remove the loan from default;

b. The communication further violates the rights of Plaintiff and potential class members because it:

i. assessed collection charges when the borrower had not received the required notice explaining how collection costs would be calculated;

ii. stated that collection costs may be assessed 60 days after the default claim purchase;

iii. threatened to contact borrower's employer to determine eligibility for administrative wage garnishment while failing to notify him of his rights as required by law;

iv. implied that nonpayment of the debt would result in garnishment of borrower's wages when, instead, Defendant must first comply with rigid statutory procedures to garnish wages; and

v. conveyed a false sense of urgency by threatening to take actions which it cannot legally take.

134. Plaintiff and the proposed class members have suffered concrete, particularized harms to legally protected interests because Defendants' false, deceptive, misleading representations, and unfair and unconscionable means to collect from Plaintiff and proposed class members could detrimentally affect Plaintiff's and proposed class members' decision-making with respect to the alleged debts.

135. GRC is an agent of NPM, and GRC and NPM are related entities in that Navient

29

Corporation is the parent of NPM and the great-grandparent of GRC.

136. Defendant NPM is vicariously liable for the actions of its agent, GRC.

137. Defendants GRC and NPM are liable to Plaintiff and the proposed class members to whom it sent the letter pursuant to 15 U.S.C. §1692k.

138. Because of Defendants GRC's and NPM's violation of the FDCPA, Plaintiff and proposed class members have suffered anxiety, stress, emotional distress, embarrassment, and other damages.

**COUNT SIX - CLASS "B" CLAIM FOR VIOLATION OF
FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. § 1692e and 1692f
(CLASS "B" against Defendants Pioneer and NPM)**

139. Plaintiff incorporates by reference herein paragraphs 1 to 65 of this Complaint.

140. Plaintiff is a "consumer" under 15 U.S.C. §1692a(3).

141. Defendant Pioneer is a "debt collector" under 15 U.S.C. §1692a(6).

142. Defendant NPM is a "debt collector" under 15 U.S.C. §1692a(6).

143. The amount Defendant Pioneer sought to collect from Plaintiff is a "debt" under 15 U.S.C. § 1692a(5).

144. Defendant Pioneer sent Plaintiff a communication attempting to collect his student loan debt. **See Exhibit F**.

145. Defendant Pioneer sent the same notice to hundreds or thousands of other consumers in Virginia who owed a defaulted student loan debt during the time period described in the Class B definition. *See* para. 57.

146. The notice violates 15 U.S.C. §1692e and §1692f because it falsely represents the character, amount or legal status of the debts, it employs false representations and deceptive

means to collect a debt and to obtain information concerning a consumer, and uses unfair and unconscionable means to collect and attempt to collect debts from Plaintiff and proposed class members. The notice is false, deceptive or misleading and uses unfair and unconscionable means to attempt to collect. The notice:

a. Misstates that Pioneer will immediately order borrower's employer to withhold money from borrower's pay;

b. Fails to provide borrower with the nature and amount of the debt;

c. Misstates that to avoid wages being garnished, the borrower must establish a repayment agreement with Pioneer on or before 11/27/2017;

d. Misstates that "disposable pay" includes pay remaining after all deductions required by law, without informing borrower that health insurance premiums are also deducted from "disposable pay;"

e. Misstates the amount of wages that can be deducted from borrower's pay;

f. Fails to provide a clear explanation of the borrower's rights;

g. Fails to offer borrower an unconditional opportunity to inspect and copy agency records related to the debt;

h. Misstates the objections which a borrower may raise in a hearing;

i. Fails to provide the borrower 30 days prior to the initiation of garnishment proceedings;

j. Misstates the burden of proof upon the borrower;

k. Fails to provide the borrower 30 days to request a hearing;

l. Fails to provide the borrower with an unconditional right to a hearing by conditioning the statutory right to a hearing on compliance with providing documentation;

31

m. Fails to adequately explain the meaning of "financial hardship"; and

n. Conveys a false sense of urgency by threatening to take actions it cannot legally take.

147. Plaintiff and the proposed class members have suffered concrete, particularized harms to legally protected interests because Defendants' false, deceptive, misleading representations, and unfair and unconscionable means to collect from Plaintiff and proposed class members could detrimentally affect Plaintiff's and proposed class members' decision-making with respect to the alleged debts.

148. Pioneer is an agent of NPM, and Pioneer and NPM are related entities in that Navient Corporation is the parent of NPM and the great-grandparent of Pioneer.

149. Defendant NPM is vicariously liable for the actions of its agent, Pioneer.

150. Defendants Pioneer and NPM are liable to Plaintiff and the proposed class members to whom Pioneer sent the letter pursuant to 15 U.S.C. §1692k.

151. Because of Defendants Pioneer's and NPM's violation of the FDCPA, Plaintiff and proposed class members have suffered anxiety, stress, emotional distress, embarrassment, and other damages.

WHEREFORE, Plaintiff respectfully requests that this Court certify this action as a class action with two classes, "A" and "B", appoint Plaintiff class representative, appoint Plaintiff's counsel as class counsel, and award:

I. Plaintiff actual damages in an amount to be determined at trial, and statutory damages of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(1) and §1692k(a)(2)(A), on Counts 1, 2, 3, and 4;

II. Plaintiff actual damages in an amount to be determined at trial and statutory damages

of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(1) and §1692k (a)(2)(B)(i), as to Counts 5 and 6;

III. Class "A" members, actual damages in an amount to be determined at trial and statutory damages, to be divided pro rata, of $500,000.00 or 1% of the combined net worth of Defendants GRC and NPM, whichever is less, pursuant to 16 U.S.C. §1692k(a)(1) and §1692k(a)(2)(B)(ii);

IV. Class "B" members, actual damages in an amount to be determined at trial and statutory damages, to be divided pro rata, of $500,000.00 or 1% of the combined net worth of Defendants Pioneer and NPM, whichever is less, pursuant to 16 U.S.C. §1692k(a)(1) and §1692k(a)(2)(B)(ii);

V. Costs and reasonable attorneys' fees pursuant to 15 U.S.C. §1692k(a)(3); and,

VI. Whatever other relief this Court deems just and proper.

TRIAL BY JURY DEMANDED.

Respectfully submitted,

WILLIE HENDERSON, individually and on behalf of all others similarly situated

By: /s/ Carrol M. Ching
      Of Counsel

John P. Fishwick, Jr. (VSB #23285)
John.fishwick@fishwickandassociates.com
Monica L. Mroz (VSB #65766)
Monica.mroz@fishwickandassociates.com
Carrol M. Ching, Esquire (VSB # 68031)
Carrol.Ching@fishwickandassociates.com
Daniel J. Martin (VSB #92387)
Daniel.martin@fishwickandassociates.com
Fishwick & Associates PLC
30 Franklin Rd, Suite 700
Roanoke, Virginia 24011
(540) 345-5890 (telephone)
(540) 345-5789 (facsimile)

*Counsel for Plaintiff*