# Exhibit M

**UNITED STATES DISTRICT COURT**
**THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOSHUA WONG, for himself and all others similarly situated<br><br>         Plaintiff,<br><br>         -against-<br><br>ALTERNATIVE CLAIMS MANAGEMENT, LLC,<br><br>         Defendant. | Index: 1:17-cv-03133(ER)(JCF)<br><br>**<u>CIVIL CLASS ACTION</u>**<br><br>**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff alleges:

## <u>NATURE OF THE ACTION</u>

1.    Alternative Claims Management, LLC ("ACM") engaged in unlawful debt collection practices in violation of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692 *et seq.*, ("<u>FDCPA</u>").

## <u>JURISDICTION AND VENUE</u>

2.    Jurisdiction is under 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d).

3.    The court has personal jurisdiction over defendant, and venue is proper in this judicial district.  Plaintiff is a resident of this judicial district, and ACM sent communications giving rise to this action to Plaintiff in this district.

## <u>PARTIES</u>

4.    Plaintiff is a natural person and a resident of New York, New York.  Plaintiff is a "Consumer" as defined by 15 U.S.C. §1692(a)(3).

5.    Defendant ACM is organized under the laws of Texas, and maintains its principal place of business at 16404 San Pedro Avenue, San Antonio, Texas, 78232.

1

6. Defendant ACM is a "debt collector," as defined under the FDCPA under 15 U.S.C. § 1692a(6).

7. ACM uses the mail, email and telephone to regularly engage in business the principal purpose of which is to attempt to collect debts alleged to be due another.

## FACTS AS TO NAMED PLAINTIFF

8. Plaintiff rented a car from Sixt Rent A Car, LLC ("Sixt") at Los Angeles International Airport between June 25 and July 2, 2016.

9. The rental was subject to a standard form car rental agreement.

10. Plaintiff returned the car on July 2, 2016 at 12:07 p.m.

11. Plaintiff was not charged for any damage to the car upon returning it. Plaintiff and a Sixt attendant walked around the vehicle at the time of return, and noted no new damage to the vehicle.

12. Later that day, Plaintiff received an automated email from Sixt, stating in relevant part:

> We would like to confirm the return of your rental vehicle today, as detailed in the attached receipt. We have also attached an estimated cost overview to this e-mail as a PDF file. Your total due will be settled within 48 hours against your payment method on file.

13. The "total due" as reflected in the attached receipt, and as settled on Plaintiff's credit card account, was $497.56.

14. On July 21, 2016, Sixt emailed Plaintiff requesting, for the first time, information on damage to the rental car. Sixt's July 21 email stated in part:

> Dear Sir or Madam,
>
> After your drop off it has been noted/ you have informed us that the vehicle you rented had sustained a new damage. …

15. The following day, Sixt email Plaintiff a "Return Checksheet," purporting to show

2

damage to the rental vehicle while it was in Plaintiff's possession. The Checksheet is attached to this Complaint as **Exhibit A**.

16. Plaintiff was not shown the Checksheet previously. Upon information and belief, the date on Checksheet, July 2, 2016, is mistaken.

17. Over a period of months, in July 2016 and again in October 2016, Sixt initiated communications with Plaintiff regarding the purported damage to the rental vehicle. Upon information and belief, Sixt sought to collect money from Plaintiff, or in the alternative, sought to collect sufficient information from Plaintiff to submit a claim to insurance.

18. Plaintiff refused to cooperate with Sixt, on grounds he was not responsible for any damage to the vehicle.

19. Plaintiff received a letter from Defendant ACM dated March 28, 2017 seeking payment for damage to the rental vehicle, or in the alternative, information to submit a claim to insurance. ACM's letter is attached hereto as **Exhibit B**.

20. ACM's March 28 letter to Plaintiff was its initial communication to him.

21. ACM prominently presented itself as a debt collector to Plaintiff.

22. ACM sought to hold Plaintiff responsible for damage he did not cause, and for damage that did not even occur during his car rental. For example, Sixt's Return Checksheet explicitly noted that rear bumper damage was pre-existing at the time Plaintiff first rented the car, and did not make any note of rear bumper damage while the car was in Plaintiff's possession. Yet, in ACM's collection letter to Plaintiff, it calculated hundreds of dollars into Plaintiff's bill for labor to repair the rear bumper.

## CLASS ACTION ALLEGATIONS

23. Plaintiff brings Count II of this action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and all similarly situated consumers in the United States and their successors in interest.

24. Upon information and belief, during the relevant time period, Sixt rented cars to consumers pursuant to standard form agreements.

25. The requirements of Rule 23 of the Federal Rules of Civil Procedure for maintaining a class action are satisfied:

   a) Upon information and belief, the Class is so numerous that joinder of all members is impracticable because there are scores or hundreds of persons who have received unlawful debt collection letters and/or notices from ACM.

   b) There are questions of law and fact which are common to all class members and which predominate over questions affecting any individual Class member.

   c) Plaintiff's claims are typical of the respective Class. Plaintiff's claims and those of Class members arise from the same operative facts and are based on the same legal theories.

   d) Plaintiff has no interest adverse or antagonistic to the interest of the other members of the Class.

   e) Plaintiff is prepared to fairly and adequately protect the interest of the Class and has retained competent counsel to represent the Class.

   f) A Class Action is superior to other methods for the fair and efficient adjudication of the claims herein asserted. Plaintiff anticipates that no unusual difficulties are likely to be encountered in the management of the Class Action.

g) A Class Action will permit large numbers of similarly situated persons to prosecute their common claims in a single forum simultaneously and without the duplication of effort and expense that numerous individual actions would engender. Class treatment will also permit the adjudication of relatively small claims by many Class members who could not otherwise afford to seek legal redress for the wrongs complained of herein.

### COUNT I
### AGAINST ACM

26. All preceding paragraphs are re-alleged. Plaintiff brings Count I for himself, and not on behalf of any class.

27. ACM violated section 1692e(2) and section 1692e(10) of the FDCPA.

28. ACM's March 28 letter to Plaintiff falsely states that Plaintiff owed money for damage to a rental car. In fact, Plaintiff owed no such amounts.

29. Plaintiff was not responsible for, and did not owe, any of the amounts ACM sought to collect from him. The damage for which ACM sought to hold Plaintiff responsible was not caused by Plaintiff, and did not even occur during the period Plaintiff rented the car.

30. ACM's March 28 letter falsely states the "Date of Loss" was July 2, 2016. In fact, the rental vehicle was not damaged on that date.

31. As Sixt's documentation makes clear, some of the damage for which ACM sought to hold Plaintiff responsible was pre-existing at the time Plaintiff first rented the car from Sixt. Plaintiff could not possibly be responsible for this damage, and the date of loss for this damage could not possibly be July 2, 2016.

32. ACM's unlawful debt collection efforts against Plaintiff reflect a lack of processes and procedures at ACM, causing defective and unlawful debt collection practices.

5

## COUNT II
## AGAINST ACM

33.    All preceding paragraphs are re-alleged.

34.    Plaintiff brings Count II against ACM for himself and the following Class:

> All consumers residing in the United States from whom, in the year prior to filing this action and ongoing through the present, ACM sought to collect a debt on behalf of Sixt for rental car vehicle damage, where such damage was first noted by Sixt following the return of the vehicle and not in the presence of the consumer from whom ACM sought to collect such payment.

35.    ACM sought, in its March 28 letter to Plaintiff, to collect amounts for damage to a Sixt rental vehicle which were not noted by Sixt until after Plaintiff returned the subject vehicle.

36.    ACM's attempt to collect from Plaintiff for damage first recorded by Sixt after the return of the vehicle, and after Plaintiff was not present, is an unconscionable means of collecting a debt, in violation of section 1692f of the FDCPA.

37.    The damage for which ACM sought to collect from Plaintiff could have been pre-existing, may not have existed at all, or could have occurred after Plaintiff returned the vehicle and it was sitting in Sixt's lot.  ACM itself emphasizes to consumers that vehicles may be damaged while parked in a lot.  For example, ACM president Randy Harris stated in a 2010 interview:

> a vehicle may get bumped in a parking lot on the passenger side. The renter never sees it or knows it happened. When the vehicle is returned and the damage is discovered they are responsible for it.

38.    By the same logic, Plaintiff's vehicle may have been damaged after it was returned to Sixt, and it was sitting in Sixt's lot.

6

39. ACM's debt collection effort violated Sixt's own representation to Plaintiff, that final settlement of all amounts owed would be processed within 48 hours of confirmation of vehicle return.

40. The class is ascertainable. Sixt's July 21 email to Plaintiff stated (emphasis added), "[a]fter your drop off it has been noted" that there was damage to the vehicle. Records of such communications may establish those accounts where damages were first recorded after the time of vehicle drop-off.

41. ACM's unlawful debt collection efforts against Plaintiff reflect a lack of processes and procedures at ACM, causing defective and unlawful debt collection practices against consumers generally.

42. ACM's collection efforts against each class member are unlawful for the reasons alleged more fully above.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff demands judgment against Defendants as follows:

a) Certifying the class alleged herein, and appointing named Plaintiff and undersigned counsel to represent the same;

b) Awarding Plaintiff and the Class statutory damages;

c) Awarding Plaintiff and the Class actual damages;

d) Awarding costs of this Action, and reasonable attorneys' fees and expenses;

e) A declaration that defendant's conduct alleged herein is unlawful, and equitable and injunctive relief sufficient to remedy the same;

f) Interest as allowed by law and all such further relief as this Court may deem just and proper.

7

## DEMAND FOR TRIAL BY JURY

Plaintiff demands trial by jury.

Dated:  New York, New York
         July 27, 2017

POSNER LAW PLLC

                   *s/ Gabriel Posner, Esq.*
                   270 Madison Avenue, Suite 1203
                   New York, New York 10016
                   Phone: 646-546-5022
                   Email: gabe@PosnerLawPLLC.com
                   *Counsel for Plaintiff*