UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

**SEUNG EUN OH, individually and behalf of all others similarly situated,**

    **Plaintiff,**

    **v.**

**COLLECTO, INC., d/b/a EOS CCA,**

    **Defendant.**

Civ. No. 20-01937 (KM) (ESK)

**OPINION**

**KEVIN MCNULTY, U.S.D.J.:**

    Collecto, Inc., doing business as EOS, attempted to collect a debt held by Seung Eun Oh. Mrs. Oh sued EOS, claiming that EOS's communications violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692o. EOS moves for summary judgment. (DE 20.)[1] For the following reasons, the motion is **GRANTED**.

**I.    BACKGROUND**

    EOS sent a debt collection letter to Mrs. Oh for an alleged debt on a Verizon account.[2] (DE 21-9.) An EOS employee later called a phone number

---

[1]     Certain citations to the record are abbreviated as follows:

    DE = docket entry

    Compl. = Complaint (DE 1)

    Mot. = EOS's Brief in Support of its Motion for Summary Judgment (DE 22)

    Opp. = Oh's Opposition to EOS's Motion for Summary Judgment (DE 29)

    Oh Dep. = Deposition of Seung Eun Oh (DE 21-12)

    Oh Decl. = Declaration of Seung Eun Oh (DE 32)

[2]     The parties dispute whether Mrs. Oh actually had a Verizon account and owed a debt. Because that dispute is not relevant to the dispositive issue in this case, I do not reach it.

listed as Mrs. Oh's and spoke with a male (her husband) who claimed to be her. (DE 21-11 at 45:21–46:10.) He disputed the debt. (*Id.* at 46:4–22.)

Thereafter, EOS mailed a second letter to Mrs. Oh. This letter acknowledged the dispute and asked Mrs. Oh to complete an affidavit and provide supporting documentation attesting that she does not owe the debt. (DE 21-10.) The letter also stated, "If we have not received your documentation by 05/24/19, your claim will be closed and you will be held responsible for payment of all charges billed to your account." (*Id.* at 1.)

Mrs. Oh, however, testified that she had not seen, or at least could not recall seeing, the letter. (Oh Dep. at 64:22–24, 65:22–23.) She testified that she does not "really open letters that much." (*Id.* at 64:4–5.) Even if there was some indication that she opened the letter, however, she stated unequivocally that she cannot read documents written in English. (*Id.* at 27:12–15.)

Mrs. Oh alleges that the letter is confusing, and that it wrongly suggests that, if she did not provide the information, she would be liable for the debt. (Compl. ¶¶ 34–39.) Accordingly, she sued EOS, alleging that the letter violated the FDCPA. (*Id.* ¶ 41.) She also seeks to represent a class of consumers who received similar letters. (*Id.* ¶ 42–43.) EOS moves for summary judgment. (Mot.)

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). To defeat summary judgment, the opposing party must point to evidence that creates a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if—taken as true—it would affect the outcome of the case under governing law. And a factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *M.S. by and through Hall v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 125 (3d Cir. 2020) (quotation marks and citation omitted). I construe facts and

inferences in the light most favorable to the nonmoving party. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998).

### III.   DISCUSSION

EOS moves to dismiss on the grounds that Mrs. Oh lacks standing or fails to state claim. (Mot. at 1–2.) Because standing is jurisdictional, I address it first, and it indeed resolves this case. *See Wayne Land & Min. Grp., LLC v. Del. River Basin Comm'n*, 959 F.3d 569, 574 (3d Cir. 2020). The doctrine of standing, says the Supreme Court, springs from "the text of the Constitution," which gives federal courts the power to adjudicate "Cases" and "Controversies." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (citing U.S. Const. Art. III, § 2). One component of a case or controversy is that a plaintiff has a personal stake in the dispute, *i.e.*, standing. *Id.* (citation omitted). To have standing, a plaintiff must have (1) an injury that is (2) traceable to the defendant and (3) redressable by the suit. *Id.* Only the first of this trifecta is at issue here.

An injury must be, among other things, "concrete." *Id.* Some injuries are indisputably concrete, or easy to see, like "physical or monetary injury." *Id.* at 2204. But concrete means "real, and not abstract," so "intangible harms," like an invasion of privacy or abridgment of speech, "can also be concrete." *Id.*

Sometimes the thrust of the plaintiff's alleged injury is simply that the defendant violated a statute, and no more. Is that enough to show a concrete injury? The Supreme Court has attempted to answer that question, beginning chiefly with *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), and continuing recently with *TransUnion, supra*. Those answers, the Court has acknowledged, are not always clear in application. *See TransUnion*, 141 S. Ct. at 2207 ("[T]he concrete-harm requirement can be difficult to apply in some cases.").

At the least, the Court instructs that, when determining whether a violation of a statutory right constitutes a concrete harm, courts must consider "history and the judgment of Congress." *Spokeo*, 136 S. Ct. at 1549. As to history, courts should "consider whether an alleged intangible harm has a

3

close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* For example, an unsolicited telemarketing call, which violates federal telemarketing law, sufficiently resembles common-law intrusion upon seclusion to qualify as a concrete harm. *Susinno v. Work Out World Inc.*, 862 F.3d 346, 351–52 (3d Cir. 2017). As to Congress's judgment, courts must respect a legislative decision "to impose a statutory prohibition or obligation on a defendant, and to grant a plaintiff a cause of action to sue over the defendant's violation . . . . In that way, Congress may elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." *TransUnion*, 141 S. Ct. at 2204–05 (quotation marks and citation omitted). For example, federal law regulates the dissemination of consumer credit information, and Congress has thus signaled that unauthorized dissemination should be treated as a redressable harm. *See In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 639 (3d Cir. 2017).

With this understanding, I turn to Mrs. Oh's alleged injuries. She must demonstrate an injury for each claim she seeks to press. *TransUnion*, 141 S. Ct. at 2208. The FDCPA, which prohibits certain debt-collection practices, contains several sections specifying different violations. Courts usually treat each violation as a separate claim because it only takes one to make out an FDCPA claim. *See Ojo v. Milrose 179 Harrison, LLC*, Civ. No. 20-949, 2021 WL 822788, at *3 (D.N.J. Mar. 4, 2021). Likewise, the Third Circuit has analyzed an FDCPA plaintiff's standing by focusing on the specific violation or violations alleged. *DiNaples v. MRS BPO, LLC*, 934 F.3d 275, 279–80 (3d Cir. 2019); *St. Pierre v. Retrieval-Masters Creditors Bureau*, 898 F.3d 351, 357–58 (3d Cir. 2018). There are two violations at issue in this case: (A) the second letter was deceptive, and (B) although she did not owe the debt, EOS reported it to her credit agency, impacting her credit.

## A. The Second Letter

The Complaint alleges that the second letter's statement requesting documentation and notifying Mrs. Oh of potential responsibility for the debt violates § 1692e, which prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt." (Compl. ¶ 41.) That is, the letter is confusing or threatens action which EOS cannot take, which are specific, enumerated ways a collector can violate the more general prohibition of § 1692e. (*Id.* ¶¶ 34–40.) *See* §§ 1692e(2)(A) (prohibiting "[t]he false representation of . . . [the] legal status of any debt"), 1692e(5) (prohibiting "[t]he threat to take any action that cannot legally be taken"), 1692e(10) (prohibiting "[t]he use of any false representation or deceptive means . . . to obtain information concerning a consumer"); *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 455 (3d Cir. 2006) (a letter is "deceptive" under § 1692e if it has the potential to confuse the least sophisticated consumer).

One approach, of course is to assume these violations occurred and ask whether they qualify as a concrete harm.[3] Here, however, Mrs. Oh has not shown that she even experienced these violations. She testified that she had

---

[3] Some courts of appeals have held that, in FDCPA cases, confusion or anxiety spurred by threatened action alone are not concrete injuries under *TransUnion* or *Spokeo. Ward v. Nat'l Patient Account Servs. Sols., Inc.*, --- F.4th ---, ---, No. 20-5902, 2021 WL 3616067, at *4 (6th Cir. Aug. 16, 2021); *Garland v. Orlans, PC*, 999 F.3d 432, 437–38 (6th Cir. 2021); *Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067, 1068–69 (7th Cir. 2020). I am not so sure. Confusion and anxiety are real emotions felt by people and thus "harms," albeit minor ones. In enacting the FDCPA, Congress tried to prevent the confusion and anxiety that can accompany deceptive debt-collection practices by creating a right "to receive true information." *See Griffin v. Andrea Visgilio-McGrath, LLC*, Civ. No. 17-0006, 2017 WL 3037387, at *6 (D.N.J. July 18, 2017). Congress thus "elevate[d]" a minor harm "to the status of legally cognizable injuries." *TransUnion*, 141 S. Ct. at 2205; *see Cottrell v. Alcon Labs.*, 874 F.3d 154, 163 (3d Cir. 2017) (an injury-in-fact can be a "trifle" (citation omitted)). Further, a prohibition on false or deceptive statements "bears a family resemblance to traditional causes of action for fraud and deceit, and protects interests previously recognized at law." *Griffin*, 2017 WL 3037387, at *6. Nonetheless, I need not conclusively disagree with these courts of appeals because Mrs. Oh has not shown that she actually experienced any confusion or anxiety.

5

not seen the letter. (Oh Dep. at 64:22–24, 65:22–23.) Likewise, she testified that she does not "really open letters that much" because she cannot read English. (*Id.* at 27:12–15, 64:4–5.)[4] Because she did not and could not read the letter, she did not experience any harm from the alleged violations.

*TransUnion* explains why. That case involved claims arising under federal law that requires consumer reporting agencies to mail certain written disclosures, which the defendants allegedly formatted incorrectly. 141 S. Ct. at 2213. But the plaintiffs presented no evidence that they opened the mailings at issue or that they were confused by them. *Id.* The Court held that the plaintiffs failed to "demonstrate that they suffered any harm *at all* from the formatting violations." *Id.* Instead, "[w]ithout any evidence of harm caused by the format of the mailings, these are bare procedural violations, divorced from any concrete harm." *Id.* (cleaned up).

So too here. Because Mrs. Oh had never seen or read the allegedly violative letter, it could not have confused her about her rights, or otherwise harmed her. *See id.* at 2210 ("A letter that is not sent does not harm anyone, no matter how insulting the letter is."). Nor does the Complaint include any allegations indicating some other way the letter could have harmed Mrs. Oh without her seeing it. The Complaint presses a claim that the letter deceived Mrs. Oh. On summary judgment, however, she "can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts" showing her injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)

---

[4] In an affidavit sworn after her deposition, Mrs. Oh vaguely states that she "received" the letter and "was confused by the letter." (Oh Decl. ¶¶ 3–4.) "When a nonmovant's affidavit contradicts earlier deposition testimony without a satisfactory or plausible explanation, a district court may disregard it at summary judgment in deciding if a genuine, material factual dispute exists." *Daubert v. NRA Grp., LLC*, 861 F.3d 382, 391 (3d Cir. 2017). Mrs. Oh gives no explanation for the discrepancy between her deposition and affidavit. Moreover, the affidavit's statement that she read the letter cannot be squared with her deposition testimony that she cannot read English. Nor does the affidavit attempt to reconcile that discrepancy. Accordingly, I disregard the affidavit.

(quotation marks and citation omitted). The evidence at summary judgment does not support such a claim that she experienced any such deception. Mrs. Oh lacks standing to pursue a claim based on this alleged violation.

## B. Credit Report Impact

Mrs. Oh now raises a second theory: She never owed the debt, yet EOS reported the debt to a credit reporting agency, and her credit rating was affected negatively. (Opp. at 12; Oh Decl. ¶ 18.)

This theory, unlike the first, would not require that she actually have seen the letter to feel the harm. It seems to implicate two potential violations. First, a communication cannot purport to collect a debt which the plaintiff does not owe; such a representation is "false" under § 1692e. *Ojo*, 2021 WL 822788, at *4 (citing *McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240, 246 (3d Cir. 2014)). Second, "collectors are prohibited from reporting disputed debts to credit agencies without noting the fact of a dispute." *Riccio v. Sentry Credit, Inc.*, 954 F.3d 582, 585 (3d Cir. 2020) (en banc) (citing 15 U.S.C. § 1692e(8)).

This theory, however, does not appear anywhere in the Complaint, which is laser-focused on the single statement in the second letter (discussed above). The Complaint does not allege that Mrs. Oh is not responsible for the debt or that her credit was impacted by a false report. Only in her affidavit has she made the assertion—albeit a vague one—that EOS's collection efforts harmed her credit. We are at the summary judgment stage, however, and she does not present any evidence regarding her credit or credit rating.

Accordingly, Mrs. Oh's new theory of standing is unavailing for two reasons:

First, she cannot raise this theory now. Generally, claims raised by a plaintiff at summary judgment must have a basis in the complaint. *Berrada v. Cohen*, 792 F. App'x 158, 161 n.3 (3d Cir. 2019); *McMahon v. Salmond*, 573 F. App'x 128, 135 (3d Cir. 2014); *Bell v. City of Philadelphia*, 275 F. App'x 157, 160 (3d Cir. 2008). If a plaintiff seeks to press a new claim at summary

judgment, the proper procedure is to first move to amend the complaint. *Bell*, 275 F. App'x at 160. That is particularly so where, as here, the theory was articulated after the close of fact discovery. (*Compare* DE 18, 27 (stating that fact discovery was to close, and did close, on April 30, 2021, *with* DE 29 (Mrs. Oh's opposition brief, filed July 6, 2021).)

The same principle applies to allegations to support standing. A plaintiff must include allegations of injury in the complaint and establish standing at the outset of a case, or the court is powerless to act. *See Lujan*, 504 U.S. at 561. Jurisdiction cannot be a moving target. If a plaintiff seeks to change her theory of standing, she cannot do so simply in an opposition to summary judgment; she must amend the pleading. *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 286 n.57 (3d Cir. 2014); *see also Ward*, --- F.4th at ---, 2021 WL 3616067, at *4 (rejecting new theory of standing in an FDCPA case not alleged in the complaint).

Accordingly, Mrs. Oh's new theory of standing is not properly before me. For one, it would require amending the claims in the complaint to include the violations outlined above. *See DiNaples*, 934 F.3d at 279–80 (analyzing standing in the context of the specific violation claimed); *St. Pierre*, 898 F.3d at 357–58 (same). Still further, she would also need to amend the allegations regarding the injury that is the basis for standing. *Blunt*, 767 F.3d at 286 n.57; *Ward*, --- F.4th at ---, 2021 WL 3616067, at *4. She has done neither, so this new theory is not live.[5]

---

[5] There is some authority for the proposition that, in a situation like this, a district court can invoke its discretion to *sua sponte* amend the pleadings under Rule 15 and proceed with summary judgment. 5 Arthur R. Miller et al., *Federal Practice & Procedure* § 1219 (3d ed. Apr. 2021 update); *see Herbert v. County of Essex*, Civ. No. 19-20409, 2021 WL 3047028, at *1 (D.N.J. July 20, 2021) (Rule 15 "requires no formal procedures, and so the court may grant leave to amend *sua sponte* . . . ." (citation omitted)). I will not take this tack, for two reasons. First, the Third Circuit has regularly held that amendments cannot be accomplished by an opposition to summary judgment. *Blunt*, 767 F.3d at 286 n.57; *McMahon*, 573 F. App'x at 135; *Bell*, 275 F. App'x at 160. The court has thus signaled, and I agree, that it is ordinarily not a proper exercise of discretion to allow amendment in this posture. Second, courts that

Second, even if I considered the new theory, it has no support in the record. All that Mrs. Oh puts forward in support is one line in her affidavit. (Oh Decl. ¶ 18.)[6] If the evidence exists, it should be available to her. She might, for example, have submitted any credit report that might demonstrate the claimed negative impact. Her statement in her affidavit, conclusory and lacking in evidentiary support, does not suffice to defeat summary judgment. *Daubert v. NRA Grp., LLC*, 861 F.3d 382, 391 (3d Cir. 2017). Accordingly, I can disregard the affidavit, and without it, she has no evidence to support her new theory.

## IV.   CONCLUSION

For the reasons set forth above, EOS's motion for summary judgment is granted. A separate order will issue.

Dated: August 23, 2021

/s/ Kevin McNulty

**Hon. Kevin McNulty**
**United States District Judge**

---

have allowed amendment have considered prejudice to the other party. *Federal Practice* § 1219, *supra*. Here, there is no indication from the parties that discovery has been taken on this theory, and EOS understandably did not brief it. Permitting amendment would thus unfairly send EOS back to discovery on sandbagged theories and claims. I add that Mrs. Oh has not even asked for amendment and further discovery, or given any indication that such discovery would produce anything of value. Thus, amendment is not warranted.

[6]   Only one record item even comes close. In deposition testimony, she stated that she learned of the "basis for bringing this lawsuit" "when [she] got [her] credit report issued." (Oh Dep. at 28:13–19.) But this testimony does not say anything about what the credit report showed, or connect it to any claim.